GOWER v. DOHENEY *et al.*

Conveyance: JUDICIAL SALE : PURCHASER WITHOUT NOTICE. Where the judgment creditor becomes the purchaser of real estate, sold at execution sale, he will be protected from an unrecorded deed or outstanding equities of which he had no notice at the time of his purchase. He stands on the same footing, in this respect, as any other *bona fide* purchaser.

*Appeal from Warren District Court.*

THURSDAY, DECEMBER 16.

ACTION of right for the possession of the N. W. ¼ of the N. E. ¼, and N. E. ¼ of N. W. ¼ of section 31, tp. 77,

range 25 west. Upon the answer of the defendant, the cause was transferred to the chancery docket, and tried by the first method of trying equitable causes. The plaintiff's petition was dismissed, and he appeals. The facts are stated in the opinion.

*Bryan & Seevers* for the appellant.

*Todhunter & Williamson* for the appellees.

DAY, Ch. J. — The plaintiff's chain of title to the lands in controversy is as follows, to wit: George S. Hampton entered the same on the 18th day of February, 1854. At the March term, 1858, of the district court of Johnson county, James H. Gower, Bros. & Co. obtained judgment against said Hampton, for $411.20.

February 4, 1860, execution issued on said judgment, directed to the sheriff of Warren county, and on the 18th day of February, 1860, a transcript of the judgment was filed in the office of the clerk of said county. On the 10th day of March, 1860, said execution was levied on the lands in question, and on the 1st of May following, they were sold in pursuance of said levy, to James H. Gower, Bros. & Co., for $125.00. On the 18th day of June, 1860, Gower Bros. & Co. assigned the certificate of purchase to James Otis Gower, who obtained a sheriff's deed for the same on the 22d day of July, 1864, and caused the same to be duly filed for record on the day following. James Otis Gower, on the 31st day of December, 1864, made his last will, devising said lands to plaintiff, and on the 12th day of September, 1865, died in Johnson county. The will was duly probated, and on the 24th day of April, 1869, was filed for record in the office of the recorder of Warren county.

It was proved that James Otis Gower, in May, June and July, 1861, was engaged in recruiting a company for the 1st Iowa Cavalry; that he went into the United States service.

in July, and remained till August, 1863, when he was discharged for disability, and that he was not able afterward to attend to business, which was the cause of the delay in obtaining the deed, and that neither plaintiff nor James H. Gower, Bros. & Co. had any knowledge of the claim of defendant, White, to said land, till long after the sheriff's sale, and but a short time before the commencement of this suit.

The defendant, Martin Doheney, also claims title to the lands in controversy, through George S. Hampton, as follows, to wit: The said Hampton, as the agent of Miles White, and with money by him furnished, entered said lands in his own name in order that upon sale thereof he might convey the same without the delay of sending to White for a deed. On the 28th day of November, 1858, Hampton, having failed to make sale of the lands, executed and delivered to Miles White a deed for the same, which was filed for record on the 10th day of January, 1861. On the 31st day of August, 1868, White conveyed said lands to Doheney, by deed, which was duly filed for record September 8, 1868.

We have thus a case wherein the judgment debtor, holding the legal title of the lands in controversy under an implied trust, after judgment was obtained against him, but before a transcript of the judgment was filed in the county in which the lands were situated, conveyed the same to the *cestui que trust*, who failed to file the deed for record until eight months after the sheriff's sale.

We are thus brought to consider in what manner the judgment creditor, purchasing at a sheriff's sale, and those holding under him, are affected by equities of third persons or their claims under unrecorded deeds. It is well settled that a *third person*, who purchases at a sheriff's sale, without notice of outstanding equities, is entitled to the same protection as any other purchaser without notice and for value. The rule, however, as to the judgment creditor

has oscillated somewhat, and can scarcely yet be regarded as settled in this State. In *Norton, Jewett and Busby* v. *Williams*, 9 Iowa, 529, which was an action of right, it was said that the rule that relief should not generally be granted against a *bona fide* purchaser without notice has no place in favor of a judgment creditor though he may have no notice of the outstanding equity. As the purchaser in that case, however, was a *third party*, with both *actual* and *constructive* notice of the outstanding deed, which was filed for record after judgment, but *before* the sheriff's sale, this point was not involved in that case, and what is said in regard to it is only *dictum*. In the case of *Parker* v. *Pierce*, 16 Iowa, 227, the question whether a purchaser, at a sale under execution, will take the land discharged of every claim or title, whether arising on an unregistered deed or a mere equity, was expressly left undecided. In the case of *Vannice* v. *Bergen*, 16 Iowa, 556, it was maintained by Justice DILLON, in his dissenting opinion, that a purchaser at sheriff's sale will take the land discharged of every claim or title, whether arising under an unregistered deed, or a mere equity, of which he had no notice at the time of his purchase, and which would be invalid against an ordinary purchaser; and that " the rule applies equally when the judgment creditor is the purchaser, as when the purchase is made by a stranger." In the case of *Evans* v. *McGlasson*, 18 Iowa, 152, the court united in holding that a judgment creditor, who becomes a purchaser at sheriff's sale, is protected at law against matters of which, at the time of the purchase, he had no notice, and that this rule also obtains in equity, unless there are equities of so strong and persuasive a nature as to prevent its application; and these, if they are relied upon, must be *alleged* and *proved*. As no such equities have been established in the present case, the doctrine of *Evans* v. *McGlasson* may be regarded as direct authority for sustaining the title of the plaintiff. But the rights of the judgment creditor received more

direct recognition, in the case of *Halloway* v. *Platner*, 20 Iowa, 121, in which it was held that when a creditor merges his judgment into a title without actual or constructive notice of prior equities he becomes a purchaser, within the meaning of section 2220 of the Revision, and is entitled to equal protection, in the absence of equitable circumstances, with any other subsequent *bona fide* purchaser. We attach no importance, under the circumstances of this case, to the delay in obtaining the sheriff's deed. Had the deed been procured and placed upon record at the time of the expiration of the period for redemption, White would, so far as appears, have occupied precisely the same position as now. It is not shown that he has sustained any loss, even to the amount of the filing fee of his deed, from the delay in procuring the sheriff's deed. When Hampton conveyed to him, the judgment was not a lien upon the property conveyed. If the subsequent taking of the property to satisfy Hampton's debt gave White any right of action against him, it does not appear but that he was just as solvent when the sheriff's deed was procured as when the year for redemption elapsed.

The deed was executed and filed for record more than four years before the defendant, Doheney, purchased from White. Hence, he stands in White's place and with no better rights. If he had purchased *before* the sheriff's deed had been recorded, a different question would be presented.

The defendant, Doheney, is not in a position to claim the protection of a court of equity. His grantor failed for more than two years after the execution of the deed to him to have the same filed for record. An examination of the record would have discovered to Doheney, at the time of his purchase, that a sheriff's deed had been upon record for four years, conveying the title of Hampton, under whom his grantor, White, claimed.

It is a wholesome rule of equity that, where one of two innocent persons must suffer, the loss will fall upon

that party who has been guilty of the first negligence. *Vigilantibus non dormentibus subserviunt lex.*

The district court erred in dismissing the plaintiff's petition.

Reversed.