CROUSE v. MORSE ET UX.

1. **Conveyance:** MISTAKE IN FACT: HUSBAND AND WIFE: TRUST. The defendants purchased, with the separate means of the wife, certain realty, which was conveyed to her. They subsequently exchanged it for other realty, the deed for which was, by mistake, executed to the husband as grantee, and so recorded, without the knowledge of the wife. The husband afterwards signed a note as surety, and was accepted as such upon the credit established by his apparent ownership of the property in question. But before the maturity of the note he conveyed the property to a third party, who conveyed to the wife: *Held*—

    1. That as between himself and wife the husband became her trustee, and could have been compelled to convey to her.

2. That the husband, being indebted both to plaintiff and to his wife, could elect to pay the debt of the one to the exclusion of the other.

3. That no lien having attached the husband, by the conveyance, was able to vest a full and perfect title in the wife.

Under the facts as stated, DAY, J., *dissenting*, holds that the wife is estopped to show that her husband was not the real owner, and that the title to the property was in herself.

*Appeal from Pottawattamie District Court.*

THURSDAY, OCTOBER 24.

THIS is an action in equity to subject certain property—the legal title to which is in the defendant Frances C.—to the payment of a judgment recovered against J. W. Morse. The court dismissed the petition, and plaintiff appeals. The facts are stated in the opinion.

*Clinton, Hart & Brewer*, for appellant.

*Montgomery & Scott*, for appellee.

SEEVERS, J.—The facts in this case are as follows: "The defendants, J. W. and Frances C. Morse, are husband and wife, and were married in 1863. In 1864 or 1865 they purchased, with the separate means of Frances C. Morse, the undivided half of lot 2 in Palmer's block in Council Bluffs, and the same was conveyed to Frances C. Morse. In 1867 the defendant Frances C. Morse, acting through her agent, J. W. Morse, exchanged this property with H. C. Nutt for lots 1 and 2 in Jeffries' subdivision to Council Bluffs. H. C. Nutt executed the deed for this property to the defendant J. W. Morse by mistake. J. W. Morse did not know that the deed was executed to himself until it was returned from the recorder's office, soon after the deed was executed, and Frances C. Morse did not know it until this suit was instituted. In December, 1869, the plaintiff, through her husband and agent, W. S. Crouse, sold to A. J. Scoville certain hotel furniture. When

the sale was first contemplated deferred payments were to be
secured by mortgage upon the property sold.    In consum-
mating the transaction the mortgage security was waived, and
instead thereof J. W. Morse signed the note as surety.    W.
S. Crouse, as plaintiff's agent, previous to accepting J. W.
Morse as security, searched the records and ascertained that
he owned and held in his own name, as shown by the records,
the property in controversy, and upon the strength of this he
was taken as security upon the note and mortgage was waived.
The note being about to mature, J. W. Morse, for the purpose
of placing the title in his wife, where it belonged, but with no
fraudulent intent, on the 23d day of May, 1870, conveyed the
property in controversy to his brother, H. S. Morse, who, on
the 16th day of following June, conveyed said property to the
defendant Frances C. Morse.    On the 1st day of August,
1870, suit was instituted upon the note above referred to, and
at the March Term, 1871, judgment was rendered for six
hundred and seventy-two dollars and eighty-two cents, which
is unsatisfied.    Scoville had no property out of which the
debt could be made after it matured, and J. W. Morse is
insolvent."

An opinion, concurred in by a majority of the court, was filed
at a former term reversing the judgment of the court below on
the ground that Mrs. Morse was estopped from setting up or
claiming title to the aforesaid real estate.

A petition for a rehearing was filed in which it is suggested
that, conceding J. W. Morse to be the legal owner of the prop-
erty, still, as the plaintiff had no lien thereon, Morse could have
sold and conveyed to a stranger at the time he conveyed to
his wife, and that the title of the former would have been per-
fect as against the plaintiff.

On this ground a rehearing was granted.    The view above
presented was not considered by the court when this case was
formerly before us.

Without impugning the former opinion, or in any manner
adhering thereto, we are constrained to believe only a partial

view of the law applicable to the facts was therein considered, and that the conclusion reached was incorrect, and cannot be supported. Our reasons will be briefly stated.

When the conveyance was made to J. W. Morse by Nutt, he became, as between himself and wife, a trustee, and held the title in trust for her, and she could, we incline to think, by an appropriate proceeding in equity, have compelled him to convey to her; or, if he refused to convey, an indebtedness to the extent or value of the property would have been created. The relation of debtor and creditor would have existed between Morse and his wife, and there is no rule of law that will prevent the debtor from paying such debt.

*1. CONVEYANCE: mistake in fact: husband and wife: trust.*

It has been held under the Revision, time and again, that a wife may acquire and own property, both real and personal, in her own right. She may loan her husband money and take obligations therefor (*Logan v. Hall*, 19 Iowa, 491), and in case her husband becomes insolvent and makes a general assignment she will share *pro rata* with other creditors. *In the matter of Alexander*, 37 Iowa, 454.

We deem it immaterial whether under the Revision a wife could sue her husband or not, for, as has been said, he could at least voluntarily discharge any legal obligations resting on him, if done in good faith and without fraud.

To say the least, J. W. Morse was indebted to both the plaintiff and his wife. Both debts were equally meritorious. Neither had a lien and their equities were equal. It was, therefore, both legal and competent for either, by the use of any legal means and the greater diligence, to have obtained a lien on the property in question, or payment of the amount due from the common debtor to the exclusion of the other; or such debtor could voluntarily pay or secure one to the exclusion of the other.

It was held in *Chase, Merritt & Blanchard v. Walters*, 28 Iowa, 460, "that where two or more *bona fide* creditors are engaged in a race for priority, the one securing it cannot

have his right defeated and postponed to a tardy or less fortunate one, by showing the fraudulent motive and knowledge of it by the creditor which prompted the debtor to give such priority."

It is unnecessary to go this length, because there is no proof of a fraudulent intent on the part of any one.

It has been held, under the Revision, if a wife leaves personal property under the control of her husband, and he, while so in possession, becomes indebted, that such property may be seized on execution therefor, unless she has filed the notice required by section 2502. *Stewart v. Bishop*, 33 Iowa, 584, and other cases.

This statute, however, has no reference to real property, and credit was not extended in this case to the husband by reason of his indebtedness to his wife, or because he had any personal property in his possession belonging to her, but under the belief that he was the owner of real estate.

The plaintiff did not know, however, whether J. W. Morse was indebted for such real property or not. It may be well conceded he was the owner of the real estate, but at the same time it must be also conceded he was indebted to his wife therefor, or that he held the title in trust for her. In either event he could well convey the property to her, and thereby discharge such indebtedness, or for the purpose of discharging the trust. A full and perfect title would by such conveyance vest in Mrs. Morse, unless a lien had attached to the property before the same was made.

Many illustrations might be given in support of this proposition. It is useless, however, to pursue the subject further, for, as we understand, *Doyle v. McGuire*, 38 Iowa, 410, is decisive of the case at bar. In that case McGuire became indebted to the plaintiff in 1865, and judgment was entered thereon in 1871. In 1866 and 1867 he became indebted to his wife. One Thompson, at the time both debts were contracted, held the legal title to certain lands in trust for McGuire, and in 1868, by his direction, Thompson conveyed

Crouse v. Morse.

the lands to Mrs. McGuire in payment of the indebtedness to her. The plaintiff sought to subject the lands so conveyed to the payment of his judgment. But it was held he was not entitled to such or any relief.

It is claimed there is a class of cases which hold, when property is entrusted to an agent which he uses and controls as his own, and while so in his possession it is seized on execution for his debts, that the owner is estopped from claiming the property. *White v. Morgan*, 42 Iowa, 113. Conceding this to be true, there is a clear distinction between those cases and the present. To make the case just cited an authority in this, the plaintiff should have obtained judgment and a lien on the property before J. W. Morse parted with the title. Having obtained a lien while the title was in Morse we are not prepared to say such lien could have been displaced by or rendered subordinate to Mrs. Morse's equity.

AFFIRMED.

DAY, J., *dissenting*.—I am unable to concur in the foregoing opinion. In my view the opinion prepared by me upon the former hearing, and concurred in then by a majority of the court, expresses the correct doctrine of this case. I cannot express my views better than to reproduce here that opinion, which, omitting the facts, which are correctly stated in the majority opinion, is as follows:

"I. The only question involved is, whether Frances C. Morse is estopped to allege ownership in herself of the title to the land in controversy, as against the plaintiff. The best definition of an estoppel *in pais* which we have been able to find in an adjudicated case is that contained in *Brown v. Brown*, 35 N. Y., 519 (541). In that case it is said: 'To establish an estoppel *in pais* it must be shown: *First,* that the person sought to be estopped has made an admission or done an act with the intention of influencing the conduct of another, or that he had reason to believe would influence his conduct, inconsistent with the evidence he proposed to give or

the title he proposed to set up; *second*, that the other party has acted upon, or been influenced by, such act or declaration; *third*, that the party will be prejudiced by allowing the truth of the admission to be disproved.'

"The act or admission constituting an estoppel may arise from passive as well as from active conduct. In *Grigg v. Wells*, 10 Ad. and E., 90, Lord Denman, Ch. J., said: 'A party who negligently or culpably stands by and allows another to contract on the faith and understanding of a fact which he can contradict, cannot afterward dispute that fact in the action against the person whom he has himself assisted in deceiving.' In *Moran v. Belknap*, 2 Johnson, 573 (588), it is said: 'Where a man who has a title, and knows of it, stands by and either encourages or does not forbid the purchase, he, and all claiming under him, shall be bound by such purchase. It is very justly and forcibly observed by a writer on this subject (Roberts on Frauds, 130) that there is a negative fraud in imposing a false apprehension on another by silence, where silence is treacherously expressive. In equity, therefore, where a man has been silent, when in conscience he ought to have spoken, he shall be debarred from speaking when conscience requires him to be silent.' The same principle is recognized in many other cases, cited in Bigelow on Estoppel, 1st Ed., p. 500 *et seq*. In this case a conveyance of the property in question to J. W. Morse was permitted to remain of record, silently, but effectively, proclaiming to all the world that J. W. Morse was the owner of the property. It must have been supposed that the conduct of third persons would be influenced by this declaration of record, for the records of conveyances are resorted to for the purpose of determining the ownership of real estate. It is argued by appellee that the agent of plaintiff might have learned the truth by inquiry of J. W. Morse as to the ownership of this property. But he was under no obligation to make such inquiry; there was nothing to suggest or stimulate such inquiry. J. W. Morse was the legal owner, as shown by the record, and upon that

Crouse v. Morse.

he had a right to rely. If Frances C. Morse had known that a deed was upon record conveying this property to her husband, and had permitted it to remain there, proclaiming a falsehood to the world, there could be no question that she would be estopped to insist upon the truth against a person misled to his prejudice by the falsehood. The difficulty of applying the doctrine of estoppel to the defendant Frances C. Morse grows out of the fact that she did not know. that the property was deeded to her husband. But the evidence shows that she had surrendered the entire management and control of her property to her husband. He was her general agent for the purpose of managing her property. He did not take the deed to himself for the purpose of defrauding his wife, and did not, in that regard, act outside of the general scope of the powers conferred upon him. The deed was made by Nutt to him by mistake. The agent knew this when the deed was procured from the recorder's office. It was his duty, then, to communicate that fact to his principal. For his neglect or omission to do so the party who reposed confidence in him, and entrusted him with the powers and duties of an agent, should suffer rather than an innocent third person.

"It is a familiar principle of equity that if one of two innocent parties must suffer, he through whose agency the loss occurred must sustain it. Besides, in this case the husband was the general agent of the wife in the management of the property. In the transaction of the business connected with this sale he acquired knowledge that the deed had been made to him, and not to his principal. The knowledge of the agent thus acquired is the knowledge of the principal. *Warburton v. Lauman,* 2 G. Greene, 420; *Jones v. Bamford,* 21 Iowa, 217; *Allen v. McCalla,* 25 Iowa, 464; *Sage v. McLaughlin,* 34 Wis., 555. There is nothing peculiar in the doctrine of estoppel which requires that the conduct creating the estoppel must be that individually of the party sought to be affected by it. The principle applies here equally as elsewhere, *qui facit per alium facit per se.* The cases are very numerous where par-

ties have been estopped by the declarations and conduct of their agents. See *Sage v. McLaughlin*, 34 Wis., 550 (555); *Plumb v. Cattaraugus County Mutual Ins. Co.*, 18 N. Y., 392. It would, indeed, be a strange doctrine if a party could entirely surrender the active control and management of his property to an agent, remain personally ignorant of everything respecting it, and thus escape, solely upon the ground of ignorance, all application of the doctrine of estoppel. See Kerr on Fraud and Mistake, pp. 136 and 137, and cases cited. The determination in this case is not inconsistent with *White v. Morgan*, 42 Iowa, 113; and *Morris v. Sargent*, 18 Iowa, 90 (99). In this case, in view of the general agency of the defendant's husband, and the entire surrender to him of the management and control of the wife's property, his knowledge becomes hers, and by such knowledge she is affected.

"II. That the plaintiff acted upon and was influenced by the declaration of record that J. W. Morse owned the property in controversy is fully shown by the testimony. The plaintiff, relying upon the responsibility of J. W. Morse, was induced to waive the taking of a chattel mortgage upon the hotel furniture, and to accept a note with Morse as surety.

"III. That plaintiff will be prejudiced by allowing the truth to be proved is equally well established by the testimony. Scoville has no property. Morse is insolvent. If Frances C. Morse is permitted to establish her ownership of this property, plaintiff must lose his debt."

The foregoing is the opinion filed upon the first hearing of this case. I am still constrained to believe that it announces a correct conclusion under the facts involved. It will be seen that it bases the decision upon the doctrine of estoppel, to which the majority opinion now makes no allusion, and which it passes "without impugning or in any manner adhering to." I have no fault to find with the general doctrine announced in the majority opinion. That a debtor may by a conveyance absolute of his property, where no lien has attached, prefer a creditor, is an elementary doctrine. But this principle, in

my opinion, has no application to the present case. The relation of debtor and creditor did not exist between J. W. Morse and his wife. He was simply her general agent, holding title to her property. The case of *Doyle v. McGuire*, 38 Iowa, 410, said in the majority opinion to be decisive of this case, is, in my opinion, not at all applicable. The title to the property in controversy in that case was not in McGuire, but in one Thompson, when Doyle recovered judgment against McGuire. It does not appear that credit was extended upon the faith of McGuire's ownership of the property, nor that, at the time credit was given, it was supposed that McGuire owned the property. No fact is shown to exist to bring the case within the principle which, in my opinion, this case involves. Referring to the case of *White v. Morgan*, 42 Iowa, 113, the majority opinion says that to make that case an authority in this, the plaintiff should have obtained judgment and a lien on the property before J. W. Morse parted with the title. The distinction here sought to be introduced is, to my mind, without foundation in principle. The general doctrine recognized in the case of *White v. Morgan* is that when an owner of property holds another out as the owner, or as having full power of disposition of it, and credit is obtained as the real owner, the property may be applied to the satisfaction of a debt contracted upon the faith of such ownership. In my opinion that case is, in principle, decisive of this. I think the judgment of the court below should be reversed, but the majority say it shall be

AFFIRMED.