Jones v. Brandt.

AFFIRMED.

JONES v. BRANDT.

1. **Husband and Wife**: PERSONAL PROPERTY OF WIFE: STATUTES CONSTRUED. Where plaintiff gave to her husband money, with the understanding that he was to use it to the best advantage, and to account to her for the money, with interest or profits, when required, and he invested it in real estate taken in his own name, *held*, that, though it be conceded that the money thereby vested in the husband "in favor of third persons acting in good faith and without knowledge of the real ownership," under section 2499 of the revision, yet that section has no application to parties who became creditors of the husband after its repeal and the enactment of section 2202 of the Code, and that, as to such creditors, the money did not vest in the husband, but constituted a debt which was a valuable consideration for the conveyance of real estate by the husband to the wife. (This point affirmed on rehearing.)

2. **Estoppel**: HUSBAND USING WIFE'S MONEY. Where the wife allowed the husband to invest her money in real estate, thereby enabling him to obtain credit, but such real estate was exhausted in prior debts of the husband, of which the creditors had knowledge when they gave the credit, *held* that the creditors were not prejudiced by the wife's conduct, and that she was not estopped thereby from asserting her ownership of the money.

3. **Fraudulent Conveyance**: EVIDENCE CONSIDERED. Before a conveyance can be impeached for fraud, actual fraud, or fraud in fact, on the part, both of the grantor and grantee, must be shown, and the evidence in this case *held* not sufficient to establish such fraud.

4. **Judicial Sale**: PURCHASER: NOTICE. A purchaser at sheriff's sale is bound by constructive notice that the legal title is in one not the execution defendant.

5. ——— : ESTOPPEL. Plaintiff is not estopped from asserting her title to the property in question because she might have enjoined the sale under which the defendant claims, but did not. She was not bound, in law or equity, to protect defendant by such injunction.

6. **Abatement**: PENDENCY OF ANOTHER ACTION. The pendency of another action to enjoin the sheriff and the execution plaintiff from selling the property was no bar to this action, by the same plaintiff, to quiet the title to the property as against a third person, who purchased at the sheriff's sale.

7. **Homestead**: PROCEEDS OF: LIABILITY FOR DEBTS. Whether the proceeds of a homestead shall become liable for debts depends always upon the manner of dealing with it. In this case the husband, who had the title to the homestead, exchanged it for a new homestead and the lot in controversy, but had all the property thus taken in exchange conveyed to his wife, *held* no fraud upon creditors of the husband, and they could not subject the lot to the payment of the husband's debts.

On rehearing former opinion adhered to.

*Appeal from Polk Circuit Court.*

THURSDAY, SEPTEMBER 21.

THE plaintiff brings this action to quiet her title to certain lands in the petition described. The defendant claims the land under judicial sales upon executions against George W. Jones, and alleges that George W. Jones caused the title to all of said lands to be placed in the hands of the plaintiff, his wife, for the purpose of defrauding his creditors. The court quieted the plaintiff's title, and canceled the sheriff's deeds under which the defendant claims the property. The defendant appeals. The facts are stated in the opinion.

*Phillips, Goode & Phillips*, for appellant.

*Nourse, Kauffman & Co.*, for appellee.

DAY, J.—The property in controversy is a farm of 240 acres, a leasehold interest for ten years, from April 1, 1877, in the south two-thirds of lot two, in block twenty-three, in the city of Des Moines, together with a brick livery barn and other improvements thereon, and a lot on corner of Tenth and Sycamore streets, west Des Moines. The plaintiff claims the farm and the leasehold interest and the improvements thereon, under the same title. The lot on the corner of Tenth and Sycamore streets is claimed by the plaintiff under

a wholly different title. It becomes necessary to consider these distinctive titles separately. .

I. . *As to the farm and the leasehold interest.*

In September, 1864, the plaintiff received from her uncle's estate and from her brother $1,424.30. This money she gave to her husband, George W. Jones, with the understanding that he was to use it for her best interests, and account to her for it, with its interest and profits, whenever she desired. No writing was executed between the parties, and the plaintiff's husband did not make any entry of the transaction upon his books. George W. Jones, who was a banker in the city of Des Moines, put this money in the banking business, and so employed it till he sold the bank some time during the same year. In the spring of 1865, George W. Jones invested this money, together with money of his own, in the Griffith block, and lot 11, block A, in east Des Moines, paying therefor $5,500. He talked with his wife about this investment, and she did not object to it. George W. Jones made considerable improvements upon the property, finishing up a building thereon and erecting additions thereto, and, in 1868, he sold a half interest therein to his brother John W. Jones, for $9,000. In January, 1870, these parties procured a loan on this property of $10,000, they and their wives joining in the execution of a mortgage thereon. This money was used in the erection of a brick hotel upon the property. It proved insufficient, and, in 1872, George W. Jones commenced negotiating for another loan of $8,000, which was consummated in July, 1874. In order to procure this loan it became necessary, in addition to the hotel property, to mortgage two lots constituting a part of plaintiff's homestead, and all the other unencumbered property of George W. Jones, with the exception of one business lot, afterward deeded to Christy in trust. The plaintiff was very reluctant to mortgage any portion of the homestead, and consented to do so only after her husband had agreed to secure her for the money obtained from her, with its interest and profits.

In November, 1876, the hotel property was traded to S. F. Spofford, for what is designated in the evidence as the Luse place. Spofford took the property subject to the two mortgages thereon, and agreed to release the property, other than the hotel property, included in the $8,000 mortgage, within one year from the time of the trade. At that time Spofford was reputed to be worth $70,000 to $150,000, and was supposed by George W. Jones to be worth from $75,000 to $100,000. In 1878 the Luse place was traded for the Vierson farm of 260 acres in Marion county, worth about $8,000. The deed to this property was made to the plaintiff, she executing a mortgage thereon for $5,000 to be applied toward the removal of an incumbrance of $7,000 on the Luse property. In addition to the farm, Vierson traded to George W. Jones certain personal property which was used in discharging the balance of the lien on the Luse place. The value of the interest which the plaintiff acquired in the Vierson farm was about $3,000. At the time the conveyance was made, in addition to the incumbrance on the Luse place, which was satisfied out of the property obtained from Vierson, and the mortgages on the hotel property, which it was expected Spofford would pay, and the $8,000 mortgage on the other property of George W. Jones, which Spofford agreed to release, George W. Jones was indebted about $4,000, to secure a part of which he had deeded a lot to Christy worth about $1,200. The evidence shows that at the time of the conveyance to the plaintiff, in addition to his homestead and the property conveyed to plaintiff, George W. Jones owned real estate of the value of about $14,000, all of which was covered by a mortgage of $8,000, which Spofford was under contract to release. The Vierson farm, subject to its incumbrance of $5,000, was traded for the farm now in controversy, subject to an incumbrance of $3,000, and the livery barn and lease, subject to an incumbrance of $1,400. Spofford proved to be insolvent, and failed to discharge the mortgages either upon the hotel property or the other property of George W. Jones. The hotel

property was sold at sheriff's sale to satisfy the $10,000 mort-gage, and the other property of Jones was sold in satisfaction of the $8,000 mortgage, and thus he was reduced to a state of insolvency.

· After the last mortgage was executed upon the hotel property, A. L. West, then doing a banking business in east Des Moines, loaned to George W. Jones $800. In 1876 West went out of business and was succeeded by Christy, to whom the demand against Jones was turned over. Afterward, Christy made various other loans to Jones, and Jones, as already stated, deeded to Christy a lot worth about $1,200, to be held in trust for the security of this debt. In June, 1877, Isaac Brandt went in partnership with Christy, and became interested in the claim against Jones. In October, 1877, the amount due from Jones being then $2,750, was divided into several small notes, which were indorsed by Christy & Brandt to their creditors. Jones, together with Christy and Brandt, was sued upon these notes and judgments were re-covered. The property in controversy was levied upon, and was purchased by Brandt in satisfaction of the judgments. Sheriff's deeds were executed to Brandt, under which he claims the property.

1. Did the money received by the plaintiff from her uncle and her brother, as to the creditors under whose claims

1. HUSBAND and wife: personal property of wife: statutes construed.

the property in controversy was sold, vest in the husband, so that it could not afford a consideration for the conveyance to the plaintiff of the property in question? The idea that, as between the plaintiff and her husband, a gift of the property was intended, is negatived by the testimony. Both the plaintiff and her husband testify that the money was placed in the hands of the plaintiff's husband, to be used by him to the best advantage, and that he was to account for the money with interest or profits when required. Section 2499 of the Revision provides: "The personal property of the wife does not vest at once in the husband, but if left under his control

it will, in favor of third persons acting in good faith, and without knowledge of the real ownership, be presumed to have been transferred to him, except as hereinafter provided." Section 2500 provides that the wife may avoid the entire surrender of her property to her husband, by filing for record with the recorder of deeds a notice of her claim. This notice was not filed, and hence the appellant insists that this property had vested absolutely in the plaintiff's husband before the conveyance to her was made. It is to be observed that section 2499 of the Revision does not provide that the wife's property shall vest in the husband, but that, as to third persons, under certain circumstances, it will be presumed to have been transferred to him. The evidence shows that the first installment of the indebtedness, under which the real estate in question was sold, was loaned to George W. Jones after both mortgages were placed upon the hotel property. The last mortgage upon the hotel property was executed in 1874, so that all of the debt now in question must have been contracted since the Code of 1873 went into operation. Nothing corresponding to sections 2499 and 2500 of the Revision is contained in the Code of 1873, but in lieu thereof the Code of 1873 contains the following provision:

"Sec. 2202. A married woman may own in her own right real and personal property acquired by descent, gift, or purchase, and manage, sell, convey and devise the same by will, to the same extent and in the same manner that the husband can property belonging to him."

As this money had not actually vested in the husband, under section 2499, except as to third persons acting in good faith, without knowledge of the real ownership, if indeed it had so vested as to them, see *Doyle v. McGuire*, 38 Iowa, 410, it follows that this section can have no application to parties who became creditors after its repeal and the enactment of section 2202 of the Code of 1873. Even under the Revision, in *Doyle v. McGuire*, 38 Iowa, 410, where the wife loaned to the husband a large sum of money, without a note

or any contract in writing, upon his agreement that she should have security for the sums loaned upon the land in controversy, and where she filed no notice of her claim as provided in section 2500, it was held that the money loaned did not vest in the husband, but that it furnished a consideration for the conveyance of the land by the husband to the wife, and that a creditor of the husband could not impeach it. In this case it is said: "Under our law the right of the wife to loan money possessed by her in her own right, which has not vested in the husband, and to take security therefor upon lands, or to receive conveyances of land in payment, cannot be doubted. Neither can it be doubted that such contracts made in good faith with her husband are valid.   *    *    *. The loans of Mrs. McGuire to her husband, if they were made in good faith, created a valid claim upon him, and to secure or pay it he could convey or mortgage his lands, or pledge in any lawful manner any interest in real estate held by him." See, also, in *Re Alexander*, 37 Iowa, 456.

In the case of *Brigham et al. v. Fawcett*, the Supreme Court of Michigan held that a husband actually indebted to the wife, may, if acting in good faith, convey to her property not exempt in payment of his indebtedness, and that other creditors can not complain that the indebtedness, or a part thereof, was at the time barred by the statute of limitations, had the debtor seen fit to assert such defense. See 4 N. W. Rep., 272.

The appellant cites and relies upon *Watson v. Riskamire*, 45 Iowa, 231, and *Moore v. Orman*, 56 Iowa, 39. In *Watson v. Riskamire*, the alleged consideration for the conveyance was certain personal property consisting of horses, cows, sheep, a harness and wagon, and some household furniture, which the husband received from the wife's guardian in 1847 and 1849. There was no agreement that he was buying the property of his wife, but it was agreed he was to take it and handle it as his own, and pay her interest on it. It was held that this did not constitute a consideration for the

conveyance of real estate to the wife in 1874. It is to be observed that this property was placed in the hands of the husband before the property rights of the wife were enlarged by statute, and when the common law rule prevailed that personal property of the wife reduced to the possession of the husband becomes the property of the husband.

The decision cannot be regarded as an authority in a case where the property was placed in the husband's hands subsequently to the enactment of the statutes which we have referred to above. In *Moore v. Orman*, Mrs. Orman obtained from her brother's and her father's estate, five or six hundred dollars, which she placed in her husband's possession in 1835. With this he purchased land and took the title in his own name. Under the law then in force the placing of the money in the husband's possession and allowing him to use it was a surrender of it to him. Besides, it is distinctly stated in that case that the evidence does not show that either Orman or his wife, at the time the money was placed in her husband's hands, expected to repay it, or made any provision for its repayment. The case is not at all applicable to the facts of the present case.

The case of *Lutz v. Mitchell*, 49 U. S., 580, relied upon by appellant, simply establishes a rule of evidence, and holds that "purchases of either real or personal property made by the wife of an insolvent debtor during coverture are justly regarded with suspicion, unless it clearly appears that the consideration was paid out of the separate estate * * *. In a contest between the creditors of the husband and the wife there is, and there should be, a presumption against her, which she must overcome by affirmative proof."

In this case the appellant concedes that "the proof puts it beyond any controversy that Mrs. Jones, in the fall of 1867, received from her uncle's estate, and her brother Ezra, about $1,420 in money, and gave the same to her husband, George W. Jones, with the understanding, as they say, that he was to invest the same for her, and she was to have it back, or its

proceeds, when she wanted it." The plaintiff has proved affirmatively and clearly that she placed the money in question in the hands of her husband, and that he agreed to account to her for it. Under our statutes and decisions a debt existed in favor of the wife against the husband, which would constitute a valuable consideration for the conveyance of real estate to the wife.

2. It is claimed, however, that the plaintiff, by allowing her husband to invest the money in the Griffith block, which afterward became the hotel property, enabled her husband to obtain credit on the faith of this investment, and that she is now, as against creditors, estopped to assert her claim to the money. Upon this branch of the case appellant cites and relies upon *Humes v. Scruggs*, 94 U. S., 22; *McGinnis v. Curry*, 13 W. Va., 29; *Hocket v. Bailey*, 86 Ill., 74. In *Hocket v. Bailey*, it was held that if a wife allows her husband to use her capital as his own, to invest and reinvest the same in his own name, and thereby obtain credit on the faith of his being the owner of the same, she will not be allowed to interpose her claim to the property so acquired, to the injury of her husband's creditors. Without determining as to the correctness of the doctrine announced in the cases above cited, we are of opinion that, under the facts of this case, there can be no estoppel. When the debt was contracted under which the property was sold to the defendant, the parties giving credit knew that the hotel property was incumbered with two mortgages, amounting to $18,000. When the hotel property was traded to Spofford for the Luse place, Spofford took the property subject to the mortgages. This property was afterward sold upon one of the mortgages, so that the creditors of Jones obtained the entire benefit of the hotel property. The Luse place was not saved out of the hotel property, but was acquired in addition. If then the creditors of George W. Jones relied upon his absolute ownership of the hotel property, they have acquired all that they counted upon, and hence, cannot

2. ESTOPPEL: husband using wife's money.

insist that they will be injured by allowing the plaintiff to set up her claim to the money. As indicating the views of this court upon the question of estoppel, in a case bearing some analogy to the present, see *Crouse v. Morse*, 49 Iowa, 382. We unite in the opinion that the plaintiff is not estopped under the peculiar facts of this case.

3. There being a valuable consideration for the conveyance in question, it is not constructively fraudulent or fraudulent in law. Before the conveyance can be impeached, actual fraud, or fraud in fact, upon the part of both grantor and grantee, must be shown.

3. FRAUDU-
LENT convey-
ance: evi-
dence con-
sidered.

Actual fraud cannot be presumed, but must be established, either by positive or circumstantial evidence. There is no positive proof that either the grantor or grantee in this case, intended to defraud the creditors of George W. Jones. George W. Jones testified as follows:

"The trade between me and Col. Spofford, referred to in the exhibit to the amended replication, was made November 10, 1876. It was reported to me by his agent, and he gave it to me upon his word and honor, that Col. Spofford was worth $150,000. When that trade was made, I heard Spofford estimated all the way from $70,000 to $150,000. I supposed that he was worth at least $75,000 or $100,000. * *. At time of trade for Vierson farm I had not the most remote idea that Spofford would not be able to pay out. I thought him entirely responsible. I had no intention of hindering, delaying or defrauding my creditors in deeding the property to my wife." The plaintiff also testified: "I received that deed with no fraudulent intent and with no intention of hindering or delaying the collection of any debts against my husband."

In our opinion the circumstances proved do not show the conveyance to have been actually fraudulent. At the time of the conveyance of the Vierson farm to the plaintiff, the money which she placed in the hands of her husband amounted, at eight per cent simple interest, to $2,934. The interest

which she received in the Vierson farm above the mortgage which she placed upon it, amounted to about $3,000. At that time Spofford was considered solvent, and George W. Jones was justified in believing that he would pay off the mortgages upon the hotel property, and release the other property from the $8,000 mortgage, as he agreed to do. If Spofford had performed his agreement, George W. Jones, aside from the property conveyed to his wife, would have had about $10,000 worth of property, in excess of enough to pay his debts. We cannot, under these circumstances, say that a conveyance of property of the value of $3,000 to his wife, in payment of an actual indebtedness of that amount, was an actual fraud upon his creditors.

4. Appellants place great stress upon the fact that the plaintiff, in her amended reply, alleges that upon the convey-

4. JUDICIAL sale : purchaser: notice.

ance of the hotel property for the Luse place she acquired and held an equity in the Luse farm, which was subsequently settled by the convey-ance to her of the Vierson farm. It is said that the existence of an equity in the hotel property and the Luse place is in-consistent with the existence of a debt in favor of plaintiff against her husband. If this should be conceded, we are un-able to see how it would aid the appellant's case. Before the judgment under which the defendant claims had been recov-ered, the legal title had become vested in the plaintiff, and her equitable estate, if she had one, had become a legal estate. The defendant purchased at the sheriff's sale, with notice, at least constructive, of that fact. A purchaser at a sheriff's sale, without notice, is protected against latent equities, but not a mere creditor. See *Gower v. Doheney*, 33. Iowa, 36; *Halloway v. Platner*, 20 Id., 121; *Bell v. Evans*, 10 Id., 353; *Welton v. Tizzard*, 15 Id., 495.

5. The property in controversy was levied upon under execution and advertised for sale on the 7th day of January,

5. ———: estoppel.

1879. On the 4th day of January, 1879, this plaintiff filed petitions in the Circuit Court mak-

ing the sheriff and the judgment plaintiffs defendants, alleging her absolute ownership of the property, and praying an injunction against the sale thereof, under the executions in the hands of the sheriff. These cases were set for hearing on the 6th day of January, 1879. They were never tried upon the merits, but on the 11th day of August, 1879, they were dismissed by the plaintiff. In the meantime the sheriff's sale proceeded and the defendant Brandt became the purchaser. This action was commenced on the 19th day of March, 1879.

*First.* Appellant insists that the plaintiff, having stood by and permitted the defendant to purchase the property, when she might have prevented the sale thereof by injunction, has waived and abandoned all claim to the property. But the plaintiff's deed was of record, and Brandt had, at least, constructive notice thereof. The plaintiff was under no legal nor equitable obligation to protect him by preventing the sale.

*Second.* It is insisted that, at all events, the pendency of that suit was an insuperable objection to the bringing of this action on the 19th of March, 1879. We are unable to see, however, how the pendency of an action against the sheriff, and the judgment plaintiffs, could be an insuperable barrier to the commencement of an action against the defendant, who, notwithstanding the pendency of the action, had become a purchaser of the property. In our opinion the court did not err in quieting the plaintiff's title to the farm and livery barn and lease in question.

6. ABATEMENT: pendency of another action.

II. *As to the lot on the corner of Tenth and Sycamore streets, west Des Moines.*

The plaintiff and her husband owned and occupied a homestead in east Des Moines. In May, 1878, this homestead was exchanged with McLain for a new homestead in west Des Moines, which was deeded to the plaintiff. In addition to this new homestead McLain gave in exchange for the old homestead $300

7. HOMESTEAD proceeds of: liability for debts.

in money, and the lot now in controversy, which forms no part of the new homestead, but is situated a block and a half from it. This lot was also deeded to the plaintiff directly by McLain, upon consideration, she testifies, of her signing the deed to the old homestead. This lot was sold under execution, upon a judgment rendered against Geo. W. Jones, April, 16, 1878, and was purchased by the defendant. The old homestead was exempt from the debts of Geo. W. Jones. He could lawfully have conveyed that homestead to his wife or exchanged it for another of equal value and caused it to be conveyed to his wife. If he had done so, the creditors would have had no just ground of complaint. If the old homestead had been conveyed to the plaintiff, and then exchanged for the new homestead, and the lot in question, it is clear, it seems to us, that the creditors of Geo. W. Jones could not have subjected the lot to the payment of his debts. It is apparent, therefore, that the creditors of Geo. W. Jones had no legal claim upon the old homestead. They cannot claim that it is a fraud upon them that they have been deprived of its proceeds. Appellants insist that the case is just the same as though the lot in question had been conveyed to Geo. W. Jones, and by him conveyed to the plaintiff. With equal propriety it might be claimed that the case is the same as though the old homestead had been conveyed to the plaintiff and by her conveyed in exchange for the new homestead and the lot in question. It is said that if the lot in question had been conveyed to Geo. W. Jones, the judgments against him would at once have become a lien upon it. This must be conceded. Whether the proceeds of a homestead shall become liable for debts depends always upon the manner of dealing with it. If the homestead should be exchanged for another, the new one would be exempt, but if it should be exchanged for a stock of merchandise, it would not be exempt. It does not advance the claim of appellant to say that the lot in question would have been liable for the husband's debts if the course of dealing respecting it had been

different. The controling facts in this case are that the title
to the lot never was in the husband, and the conferring of
the title upon the wife placed the creditors in no worse con-
dition than they were in before. Under these circumstances
we think the lot cannot be subjected to the payment of the
debts of the plaintiff's husband, upon the ground that this
conveyance as to them was fraudulent. See *Delashmut v.
Trau*, 44 Iowa, 613, and *McTighe v. Bringholf*, 42 Id., 455.

AFFIRMED.

ON REHEARING.

ROTHROCK, J.—After the foregoing opinion was filed a pe-
tition for rehearing was presented in which counsel for ap-
pellant, with great earnestness, insisted that the opinion was
essentially wrong. Upon reading the petition for rehearing
some of us were led to doubt the correctness of the second
point of that part of the opinion which determines the rights
of the parties in the farm and lease hold interest. It is there
stated that when the debt was contracted, under which the
property was sold to the defendant, the parties giving credit
knew that the hotel property was incumbered by two mort-
gages amounting to $18,000. And elsewhere in the opin-
ion it is stated that the first installment of the indebtedness
under which the real estate was sold was loaned to Geo. W.
Jones after both mortgages were placed on the hotel prop-
erty. It is contended that this last statement of fact is con-
trary to the evidence. We have carefully re-examined the
abstract of evidence and conclude that the opinion is correct.
The evidence as to the date of the loan is to be found in the
testimony of A. L. West. We need not repeat it here. He
plainly states that when he loaned the money to Geo. W.
Jones the hotel property was incumbered to the amount of
$18,000. The idea that the witness had reference in his
testimony to renewals of previous loans finds no support from
the record. The fact remains that all the indebtedness
for which the property was sold, at sheriff's sale to Brandt,

was contracted after the Code of 1873 went into operation. But it is true that this indebtedness was increased, and new loans made to Geo. W. Jones after he had exchanged the hotel property for the Luse place. The contract for this exchange was made in November, 1876, and on December 12th, 1876, the loan was increased from $1,000 to $2,000, and on May 15th, 1877, an additional loan of $575 was effected.

As to at least part of the indebtedness, the theory of the opinion that the creditors of Geo. W. Jones relied upon his ownership of the hotel property is not correct. If any reliance was had upon any property for the indebtedness last incurred it was upon the Luse place. But all of this indebtedness arose since the enactment of the Code of 1873, and under its provisions "a married woman may own in her own right real and personal property acquired by descent, gift, or purchase, and manage, sell, convey and devise the same by will to the same extent and in the same manner that the husband can property belonging to him." There was, then, at the time these loans were made to Geo. W. Jones an indebtedness from him to his wife which both of them recognized as valid and binding and founded upon an actual money consideration. There was no statute requiring any notice of this indebtedness to be given to the public nor the creditors of Geo. W. Jones. If the debt had been due from Jones to a third person a creditor of Jones could not be allowed to impeach a conveyance of property in payment of the debt, because he did not know of such indebtedness. Why should he be allowed to do so because the wife is the creditor who is preferred? It is correct that transactions of this kind between husband and wife are required to be scrutinized closely because of the relation of the parties. But when the husband is honestly indebted to the wife, he has the right to pay the debt, and the wife may receive payment the same as any other creditor, and such payment may be made by a conveyance of property, no lien thereon having attached. It appears to us that the case of *Crouse v. Morse*, 49 Iowa, 382, is conclusive on this question.

The petition for a rehearing reiterates the argument that the pleadings and evidence do not show that the relation of debtor and creditor existed between Geo. W. Jones and wife after the purchase of the hotel property, but that thereafter she had an equity in the property which she should have protected by taking an agreement, or deed thereto, to the extent of her money invested in it, and that because she did not do so the money given to her by her husband must be regarded as a gift to him. The ready answer to this claim of counsel is that this whole record excludes the idea that Ellen W. Jones ever claimed an equity in any of the property in the sense of being the owner of any interest therein. There never was any relation between her and her husband as to her money other than debtor and creditor. It is true the rights she asserts are named in her pleadings as her equities in the property. But in the same connection she explains her equities to be her right to be repaid the money placed in her husband's hands in 1864, with its proper interest for earnings and profits. And all through the testimony of both Geo. W. Jones and Ellen Jones it is apparent that there was no arangement that she was to have any equitable interest in any specific property, but that her money was to be invested by her husband and she was to be repaid by him. We do not deem it necessary to discuss other objections made to the original opinion by counsel for appellant. They have been heretofore fully considered and we can discover no reason requiring a change in any conclusion formerly reached, nor of further elaboration of the other points in the case, and we unite in the opinion that the former order of affirmance must be adhered to.