STATE BANK OF DEEP RIVER, Appellant, v. CHARLES WOLFORD et al., Appellees.

FRAUDULENT CONVEYANCES: Relation of Parties—Husband and
1   Wife. A wife has the same right as any other creditor of her husband to receive a conveyance from her husband in fulfillment of a bona fide contract between them.

HUSBAND AND WIFE: Conveyances Between—Fraud—Wife's
2   Lands in Husband's Name—Estoppel. The naked fact that the wife allows her lands to stand in the name of her husband will not, *of itself*, estop her from asserting her title as against her husband's creditors.

DEEDS:   Constructive Notice—Conveyances Between Husband and
3   Wife—Record—Effect. A wife, receiving a conveyance from her husband, may, equally with any other person, rely on the constructive notice imparted to the world by the record of the deed.

HUSBAND AND WIFE:   Conveyances Between—Creditors—Estop-
4   pel of Spouse to Assert Title. A wife who has allowed her lands to stand in the name of her husband is not estopped to assert her title against the husband's creditor who became such after the husband had conveyed the lands to the wife.

HUSBAND AND WIFE:   Conveyances Between—Fraud—Preferring
5   Wife as Creditor. Principle recognized that a husband may lawfully prefer his wife to other creditors by conveying lands to her in payment of a bona fide debt, provided no fraudulent intent poisons the transaction.

*Appeal from Poweshiek District Court.*—JOHN F. TALBOTT, Judge.

FRIDAY, OCTOBER 20, 1916.

ACTION in equity to subject certain lands to the payment of a judgment recovered by plaintiff against the defendant Charles Wolford. There was a decree granting the relief prayed for in part only, and plaintiff appeals.—*Affirmed.*

*Clark & Clark*, and *W. R. Lewis*, for appellant.

*J. W. Carr*, for appellees.

WEAVER, J.—The defendants are husband and wife. At different times, beginning October 7, 1907, and ending December 19, 1910, Charles Wolford borrowed money from the plaintiff bank and evidenced by promissory notes the debts so created. On the date last named, he gave the bank his note for $5,000, including therein renewal of several loans theretofore obtained by him. Later, plaintiff brought an · action on this note, and procured judgment against Charles · Wolford for $5,713 and costs. Thereafter, plaintiff instituted this suit in equity, alleging that the judgment was unpaid, and that Charles Wolford had no property in his own name upon which a levy of execution could be made, and asked that the lien of such judgment be established upon certain described lands, legal title to which was held by Millie Wolford. In support of this demand, it was alleged that Charles Wolford was formerly the owner and holder of such title, but had conveyed the same to his wife in fraud of his creditors. It was also further alleged that the wife, by permitting the title and apparent ownership of the lands to remain for a long time in her husband, thereby giving him an appearance of financial responsibility, was estopped to assert title in herself as against plaintiff, who, on the strength of such appearance, had extended credit to her husband.

It appears in evidence that, for several years, Charles Wolford held the legal title to the land in question, together with certain other tracts aggregating about 168 acres. On December 9, 1909, he conveyed to his wife an undivided half of said land. On March 13, 1911, he quitclaimed to his wife the other undivided half of the larger part of the property, stating in the deed that it was "executed in pursuance of an agreement theretofore entered into between the grantor and grantee for the purpose of making partition of the lands

jointly owned by them." At the same time, the wife quit-claimed to the husband her interest in other lands. The description and amount of the other lands are not clearly shown in the record, but it appears more or less clearly that the result of the partition was to apportion to his wife somewhere from 90 to 100 acres, and to Charles Wolford, the remaining portion. After these mutual conveyances had been made, Charles Wolford platted his homestead to include the greater part of the lands left in his name. It further appears, somewhat indirectly, that thereafter, and before plaintiff had undertaken to enforce collection of its note, another creditor attached some part of the land, and, in settlement of that suit, Wolford and his wife conveyed a portion of the land to a trustee, to secure payment of the debt.

The issues joined in this case present two questions: First, Was the conveyance of title from Charles Wolford fraudulent or collusive for the purpose of defrauding his creditors? and, second, even if no fraud was intended, is the wife estopped to set up her title against the enforcement of plaintiff's judgment?

The first inquiry is peculiarly one of fact. On the trial below, plaintiff questioned whether the wife furnished any substantial consideration for such conveyance. It is shown, however, without material dispute, that, at

1. FRAUDULENT CONVEYANCES: relation of parties: husband and wife.

the time of their marriage, Charles Wolford was without means, except, perhaps, a team and some minor items of personalty, and that his wife had about $500 or $600; and that, under a promise of repayment, she allowed this sum to be used in the purchase of the first 40 acres of land, which was bought for $800. It is also shown by the administrator of her father's estate that she received from that source $2,177.38. Of this sum, $500 was applied to the payment of a promissory note of Charles Wolford's. Before this money was received, Wolford had taken title to an additional 50 acres of land, bought for $2,000, the money for which had been borrowed upon a mortgage

made to cover both this land and the 40-acre tract. His wife was reluctant to consent to a lien on the 40 acres, which was then an unincumbered homestead, but finally did so, upon her husband's agreement to transfer the title to her. Later, when she received her share in her father's estate, the amount so realized, after deducting the $500 paid upon her husband's note, held by the estate, was used in paying off the mortgage. The debt or obligation to the wife was a good consideration for the conveyance of the land to her, and, generally speaking, the husband's right to pay or secure a bona fide indebtedness to his wife, or to perform a contract made with her, is one to which his other creditors cannot object, unless she is in some manner estopped in their favor. *Bennet v. Strait*, 63 Iowa 620; *Crouse v. Morse*, 49 Iowa 382, 385; *Mahaska County v. Whitsel*, 133 Iowa 335; *Payne v. Wilson*, 76 Iowa 377; *Neighbor v. Hoblitcel*, 84 Iowa 598; *Sprague v. Benson*, 101 Iowa 678; *Muir v. Miller*, 103 Iowa 127, 131; *Hoag v. Martin*, 80 Iowa 714, 720; *First Nat. Bank v. Eichmeier*, 153 Iowa 163. The last cited case is very much in point.

It is true that, under some circumstances, we have held a wife estopped as against her husband's creditors to assert her ownership of property the title to which she has permitted to stand of record in the name of her husband, thereby inducing such creditors to extend to him credit which otherwise would have been withheld. *McCormick v. Perkins*, 135 Iowa 64. In the cited case, there were peculiarly persuasive equities in favor of the creditor which do not appear in the record before us, and the claim of good faith on the wife's part was quite clearly impeached. Such is not the case here presented. So far as appears in the evidence, the wife had no such notice or knowledge of her husband's alleged insolvency as to put her on her guard concerning the good faith of the conveyance on his part. She knew he was owing the bank something, but not its amount. She did not know he was badly involved. She had frequently

2. HUSBAND AND WIFE: conveyances between: fraud: wife's lands in husband's name: estoppel.

asked him to carry out his agreement with her. She was in feeble health, and may not have given to her husband's affairs that close attention which would otherwise have been natural.

3. DEEDS: constructive notice: conveyances between husband and wife: record: effect.

He testifies that, at the time of the conveyance, he thought himself all right financially. While the bank doubtless supposed him to be at all times the owner of the land, it had at least constructive notice of the conveyance to his wife, and, in so far as the record title gave him any appearance of solvency, it ceased when such title passed to the wife. No inquiry was ever made of her, and her constructive notice to the world at large of her acquirement of title was all that the law required at her hands. The property in her hands has been by the court below charged with liability for all that part of the indebtedness accruing to the plaintiff while the title was in the husband. The equities upon which that finding is based are not here questioned by the appellees, but they afford no support for the remainder of plaintiff's claim. In *Hoag v. Martin*, 80 Iowa 714, 720, the court, in refusing to enforce a claim against the wife's property, said:

"It was once the law of the state that a wife entrusting her property to her husband must give a record notice of her ownership, or suffer its loss, if credit was extended under a misbelief as to ownership. For reasons best known to the legislative power, that law was canceled, thus indicating a more liberal rule as to the management and custody of such property."

In *Payne v. Wilson*, 76 Iowa 377, we said:

"Appellants contend that plaintiff, by giving the money to her husband without notice to others of her rights therein, is estopped from now making any claim thereto to the prejudice of creditors. But she loaned the money to her husband and thereby became his creditor. . . . It does not appear that she has by any act or representation misled anyone to his prejudice. The fact that she knew of her husband's embarrassment at subsequent times when she attempted to secure

her claims is immaterial, unless she intended by her acts to hinder or otherwise defraud the creditors of her husband."

So, too, in *Rockford B. & S. Mfg. Co. v. Mastin,* 75 Iowa 112, 114, the court thus states and applies the rule as between the wife and other creditors of the husband:

"We are unable to find from the evidence that Mrs. Mastin had any knowledge that her husband was indebted to any considerable extent, and certainly not that he was insolvent. She so testifies, and there is nothing in the record which will warrant us in disbelieving her. She was a creditor of her husband, and he had the same right to secure or pay her as any other creditor. He conveyed, and she accepted the land in payment of such indebtedness, and it is immaterial if her husband did at the same time sell all the property he had."

In *Bennet v. Strait,* 63 Iowa 620, land was bought with the wife's money, and title taken in the name of her husband. While the title was in this condition, the husband contracted certain debts, after which he conveyed the land to his wife, and thereafter his creditors sought to enforce collection of their claims from said property. In denying them such relief, the opinion uses the following language:

"Counsel for appellants insist that, because the title was taken in the name of the husband, and while thus held the debts were contracted, the wife should be estopped from asserting her equitable title to the land as against the plaintiffs. That the law of estoppel has no application from the mere fact of the husband's holding the title . . . , see *Crouse v. Morse,* 49 Iowa 382."

In the case thus cited, the husband held title to land equitably belonging to his wife, and, after contracting a debt, conveyed the property to his wife, and in holding the property not liable for such debt in her hands, we said:

"It may well be conceded he was the owner of the real estate, but at the same time . . . he was indebted to his wife therefor, or that he held the title in trust for her. In either

event he could well convey the property to her, and thereby discharge such indebtedness, or for the purpose of discharging the trust. A full and perfect title would by such conveyance vest in Mrs. Morse, unless a lien had attached to the property before the same was made."

In another case, we have held that the rule by which a wife is estopped on account of her silent acquiescence in the apparent ownership or conduct of her husband is applicable only "during the time he holds title." *Moore v. Rawlings,* 137 Iowa 284, 286. Moreover, none but existing creditors have the right to contest the good faith or validity of such a transfer of property, and it is here conceded that all of the plaintiff's claim not upheld by the trial-court is based entirely upon debts contracted by the husband after the original conveyance to his wife. In other words, plaintiffs were not existing creditors of Charles Wolford, and they were in no manner defrauded or misled by any act or failure to act on part of Millie Wolford. *Tenold v. Klimesh,* 160 Iowa 410, 414; *Rollins v. Shaver W. & C. Co.,* 80 Iowa 380, 389; *Farmers & Merch. Bank v. Daiker,* 166 Iowa 728; *Daggett v. Bulfer,* 82 Iowa 101. In the *Tenold* case, supra, it was also held that, even if fraud be shown, it was still incumbent upon the plaintiffs to show what part, if any, of the consideration of the note which had been reduced to judgment had its origin prior to the transfer of the property. The appellant in the present case, being a subsequent creditor, is in no position to complain of the decree below, sustaining the wife's title to the land. Nor would its position be materially improved if it were to be classed as an existing creditor. The fact that the wife was also a creditor of her husband's from a date anterior to the origin of the husband's debt to plaintiff is clearly established, and, in transferring the land to her, he did no more than to prefer her to other creditors, a thing which he could rightfully do. *Mahaska County v. Whitsel,* 133 Iowa 335;

4. HUSBAND AND WIFE: conveyances between: creditors: estoppel of spouse to assert title.

5. HUSBAND AND WIFE: conveyances between: fraud: preferring wife as creditor.

*Daggett v. Bulfer,* 82 Iowa 101; *Jones v. Brandt,* 59 Iowa
332; *City Bank v. Wright,* 68 Iowa 132; *Sims v. Moore,* 74
Iowa 497; *Gaar v. Klein,* 93 Iowa 313; *Aultman v. Greenlee,*
134 Iowa 368.

Had the husband been the absolute owner of the land up
to the date of the conveyance to his wife, he could, as we have
already seen, have conveyed it to her in payment of his debt
to her, and her title would be good against his other creditors,
subject only to the condition that there was no purpose on
her part to aid in defrauding others  This is distinctly held
in many of the cases to which we have referred, as well as in
others too numerous to mention.  Such being the case, it would
seem inconsistent with sound reason to hold that she occupies
any less favorable position when she demands and receives
conveyance from him of land which has at all times been
equitably her own.

We find nothing in the record on which the charge of
fraud can be sustained, and nothing which estops the wife
from asserting the title conveyed to her.  In view of the nat-
ural tendency of members of the same family to aid and
protect each other, and the difficulty which a party chal-
lenging the good faith of a transaction between them neces-
sarily experiences in proving the facts by disinterested wit-
nesses, the courts will scrutinize such dealings with care to
see that they do not cover a fraudulent device to defeat cred-
itors, but the mere fact of the relationship gives rise to no
inference or implication of bad faith.  The legislature having
removed the disabilities of the wife and made it possible for
husband and wife to contract with each other and to enforce
contract rights against each other, it would be an unwar-
ranted assumption of power by the courts to destroy the value
of such right by making its exercise in every case presump-
tively fraudulent.  The correctness of the decree below is not
open to reasonable doubt, and it is therefore—*Affirmed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.

W. L. CLARK, Appellant, v. JOE WEATHERS et al., Appellees.

NEGLIGENCE: Contributory Negligence—Apparent Causal Connection—Burden to Remove—Automobile Collision. Contributory negligence, having apparent causal connection with an automobile collision in which plaintiff was injured, defeats recovery, *unless plaintiff removed such apparent causal connection.*

PRINCIPLE APPLIED: Plaintiff, with others, in a Ford automobile, and at a speed of from 12 to 15 miles per hour, approached a bridge, and gradually slowed down and stopped, in order to enable two approaching teams on the bridge to get out of the way. Unknown to plaintiff, defendant, when plaintiff stopped, was 200 feet in the rear of plaintiff, and, with a Cadillac automobile, was approaching the same bridge at a speed of from 25 to 30 miles per hour. Neither plaintiff nor his driver gave any signal to anyone in the rear of their intention to stop, as commanded by Sec. 1571-m18, Code Supp., 1913. Defendant's automobile ran into the rear of plaintiff's car. Plaintiff estimated that his car was hit a full half minute after he had stopped. *There was no evidence as to how quickly or within what distance defendant might, in reason, have stopped, had he received a signal.* Held, plaintiff's failure to signal to defendant constituted contributory negligence; that such negligence had, apparently, causal connection with the collision; and that plaintiff, having failed to remove such apparent causal connection by other evidence, must suffer a directed verdict.

*Appeal from Woodbury District Court.*—W. G. SEARS, Judge.

SATURDAY, OCTOBER 21, 1916.

ACTION for damages resulted in a directed verdict for defendant and judgment thereon. The plaintiff appeals.—*Affirmed.*

*Shull, Gill, Sammis & Stilwell,* for appellant.

*Griffin & Page* and *H. B. Walling,* for appellees.

Ladd, J.—The complaint is that defendants were negligent in not stopping their automobile before colliding with the rear of that of plaintiff. The sole issue is whether the evidence was such that this issue, with that of