## DELASHMUT V. TRAU ET AL.

1. **Conveyance:** WHEN VOLUNTARY: RIGHTS OF CREDITORS. A voluntary conveyance will be held void as against creditors only when it embraces property which is liable to be taken in execution for the payment of debts.

2. ——: ——: HOMESTEAD. A voluntary conveyance of the homestead by its owner, even when made with a fraudulent intent, vests the title absolutely in the grantee, so far as the grantor is concerned, and it does not become subject to the lien of a judgment previously obtained against the latter. BECK and ADAMS, JJ., *dissenting*.

3. ——: RULE APPLIED. T. conveyed her homestead to her son, receiving no consideration therefor; the son went into occupation of the property and paid the mother rent for its use; plaintiff had previously obtained a judgment against her, and asks that the conveyance be set aside and his judgment declared a lien upon the property: *Held*, that the mother had the legal right to make the conveyance; that the property was exempt at the time it was made, and that the rights of the plaintiff were not prejudiced thereby, and that he was not entitled to relief. BECK and ADAMS, JJ., *dissenting*.

*Appeal from Des Moines District Court.*

TUESDAY, OCTOBER 24.

THE petition in substance alleges that about August 29th, 1871, plaintiff recovered against Matilda Trau a judgment for $391.64, and that at that time Matilda Trau was the owner and in possession of lot No. 462, in the City of Burlington, with the buildings thereon, upon which plaintiff's judgment became a lien; that about the 2d day of July, 1872, Matilda Trau being about to remove permanently out of the State, made and caused to be recorded a deed conveying said lot to her son, William Trau; that William is a young man, without means to invest in property of this value, and that the deed to him was without consideration, not in good faith, but fraudulent, and for the purpose of hindering and delaying plaintiff and other creditors of Matilda in the collection of their claims against her, and that she is in fact still the owner of the property, and in control of the same; that plaintiff

caused to be issued a general execution and the sheriff levied the same on said lot 462, but that he is unwilling to sell the property so long as the deed to William is allowed to stand. He prays that said deed be declared fraudulent and void, and be set aside.

The defendant, Matilda Trau, admits that at the time the judgment was obtained she was the owner and in possession of the property described; she avers that she is a widow and the head of a family, and that long prior to the date of the judgment and the indebtedness on which it is based she owned and possessed said property, and occupied and lived upon it with her family as a homestead, and that she so occupied and held it at the time she sold it to William Trau; she denies that she conveyed the property with any fraudulent intent, and avers that she had a lawful right to make said sale and conveyance, the property being exempt from execution against her.

The defendant William Trau admits that he purchased the lot, but denies that the sale to him was fraudulent, and alleges that it was held by said Matilda as her homestead, and that she was the head of a family and entitled to it as such.

The court entered a decree setting aside the conveyance, and subjecting the property to the lien of plaintiff's judgment. Defendants appeal.

*Theo. Guelich* and *Stutsman & Truelock,* for the appellants.

*Hall & Baldwin,* for the appellee.

DAY, J. — There is no conflict in the evidence that when the debt was contracted, the judgment rendered, and the conveyance executed to William Trau, the property in question was the homestead of Matilda Trau, and was occupied by her as such.

The deed of Matilda Trau to William bears date July 25, 1872, is for the expressed consideration of $500.00, and is subject to a mortgage of $700.00.

On the 18th day of March, 1873, the plaintiff caused execution to issue, which was levied on the property in controversy.

It seems from the evidence that Matilda remained in the property until May or June, 1873, when she removed to Chicago. It is not disputed that, at the time this suit was commenced, she was a non-resident of the State. The plaintiff does not, as we understand, controvert the right of Matilda Trau to make a voluntary conveyance of her homestead. Plaintiff in his argument states that he rests his case upon one question of fact, and that is, that Matilda Trau is a non-resident of the State, and is in fact the owner of the property in controversy, although nominally the title is in the name of her son William. And it is claimed that the decree below was upon this ground. The argument of plaintiff employs the following language: "If Matilda Trau is a non-resident of Iowa, and owns real estate in Des Moines county, and plaintiff owns a judgment of record in that county, does it affect the lien of that judgment to say that the property was once her homstead, and while it was such she had the *legal right* to convey it? If she did *not* convey it, why trouble our minds with the legal question of her right to do so?" If she did not in fact convey the property, it is quite clear there is an end of the controversy. The real and material question for our inquiry is, what did she do respecting the property? The answer is, as deduced from the evidence in the case, she executed a deed of conveyance of it to her son William, on the 25th day of July, 1873. What was the effect of this conveyance? Plaintiff claims that, notwithstanding this deed, the property in controversy continued as before to belong to Matilda Trau. He rests his right to relief upon the existence of that fact. Let us examine this position. The conveyance from Mrs. Trau to her son William possessed one of two characters: it was either in good faith or it was fraudulent. If it was in good faith, it passed the title absolutely to the son, and no one has any ground of complaint; if it was fraudulent, Mrs. Trau cannot set it aside. As between her and her son, it vests the title in the son just as absolutely as though it had been made in good faith. It is said that the son, after the conveyance to him, recognized his mother's ownership and paid her rent. Suppose he did? This act was purely volun-

tary on his part. The mother was not in a condition to compel such payment of rent. Whenever the son sees fit to cease such payment, there is no legal means whereby the mother can compel him to continue it. If, then, the legal title has passed from Mrs. Trau in such manner that she has no legal means of re-investing herself with it, how can it be said that she is still the owner in fact of the property? Is not that an anomalous ownership which confers no rights which the law will protect or enforce?

Suppose the conveyance was intended to keep the property beyond the reach of plaintiff. What legal ground of complaint has he? He could not reach the property for the satisfaction of his debt before the conveyance, and he was in no worse condition after it. His basis for relief must be that the conveyance was fraudulent as to him. But how is he to make this fraud to appear? The most and all that he can claim is that the conveyance was voluntary, and made for the purpose of hindering him in the collection of his debt. But the conveyance does not create any exemption of property; it merely perpetuates one which existed before.

In order to make a voluntary conveyance void as against creditors, it is indispensable that it should convey property which would be liable to be taken in execution for the payment of debts. *Dearman v. Dearman & Coffman*, 4 Ala., 521; *Planters' Bank v. Henderson*, 4 Humph., 75; Kerr on Fraud and Mistake, 209, and cases cited; *Wolf v. Van Metre*, 23 Iowa, 397.

The case, we think, resolves itself into the following propositions, which exist beyond question: That the title to the property has passed from Matilda Trau beyond her power of recall, and that the plaintiff, because of such alienation, is in no worse condition than he was before.

In our opinion the court erred in setting the conveyance aside upon plaintiff's application.

REVERSED.

BECK, J., *dissenting.*—The evidence in this case, to my mind, establishes the intention of the defendants, mother and

son, to be such that the latter was to hold the title of the property for the benefit of the other and the deed was executed with the purpose of enabling the mother to keep the property from her creditors after she had abandoned its occupation as a homestead. While the foregoing opinion does not deny this fact it maintains that plaintiff has no ground of complaint and can claim no relief because, when the property was so conveyed, he could not reach it with his claim for the reason it was then occupied by Mrs. Trau as a homestead; that whatever the intentions of the defendants may have been, as the property was exempt from plaintiff's debt when a homestead they may put it out of the reach of plaintiff when it ceases to have that character.

Let me notice briefly considerations, which, in my judgment, show the error of the conclusions reached by my brothers. The purpose of defendants was to enable the mother to hold the real estate, receiving the rents and profits, while living permanently in another state. This she could not do without the property becoming subject to the debts. But the transaction between her and her son, whereby he acquired the title, was intended to defeat the law and rob plaintiff of his remedy against the property after its abandonment as a homestead. This, equity will not permit, but will set aside all acts of parties having such an object.

The fact that the mother could have made a *bona fide* sale of the property, whereby plaintiff would have been cut off from all remedy against the property, cannot be assigned as a reason for upholding a dishonest one. And because, at the time of the sale and as long thereafter as the defendant debtor occupied the property as a homestead, plaintiff could not subject it to his judgment, it does not follow that he could not do so after the defendants had put their fraudulent intentions into practice by the mother abandoning the property as a homestead and the son taking possession to hold it for her benefit. It may be admitted that the fraud of the parties, at the time of the conveyance, had not so changed the character of the property that it became subject to plaintiff's execution—that is, the fraud had not been so far consummated that

the property lost the homestead character. But the moment this happened, plaintiff's rights attached. A parallel case will illustrate the principle we apply. A is largely indebted and has no property that may be reached by execution. A and B enter into a contract that the latter shall hold the title of all property which the former may acquire, for the purpose of defeating A's creditors. Under this arrangement A, after the lapse of time, acquires property in the name of B. Can it be doubted that chancery will regard B as the trustee for A, and will enforce judgments against him by making the property subject thereto? The fact that A at the time of the contract with B had nothing which the law will render subject to execution, cannot be urged as a reason for holding his property subsequently acquired in the name of B free from his debts.

The moment Mrs. Trau abandoned the occupancy of the property in question as a homestead, it became subject to her debts. If it had been conveyed prior to such an abandonment for the purpose of enabling her to effect a future fraud upon her creditors, namely, to hold the property and receive the rents and profits, which, except for the conveyance would be subject to execution, the conveyance is void, because dishonest and devised for the purpose of defeating her creditors.

If the views of my brothers be correct, Mrs. Trau could acquire another homestead, and dispose of it in the same manner as she did the property in suit, which, for the reasons given in the foregoing opinion, would be exempt from her debts, and so another, and another, until, through her faithful trustee, her son, she would become the holder of real estate, by the most secure tenure against debts, to an extent limited only by her ability to carry on such operations. Neither the law nor equity sanctions doctrines that will be fruitful of such results.

An additional remark upon the evidence is proper here. My conclusion that the defendants intended by the conveyance of the property to defeat the creditors of the mother, and that the property is held for her benefit, is based upon most satisfactory evidence. The son's declaration, as shown

Delashmut v. Trau.

in evidence, will support no other conclusion. It is shown also that through him the rent of the property was received by the mother; he offered it for sale as hers and, finally, admitted that the conveyance was made to him in order to hold it against debts which his mother had contracted. I have rarely met with a case where fraud of this character was so satisfactorily established.

I think the judgment of the District Court is in accord with the law and amply supported by the evidence.

### PETITION FOR REHEARING.

ROTHROCK, J.—After the filing of the majority opinion, and the dissent thereto, a petition for rehearing was filed and a reply ordered. We have examined the petition for rehearing and the reply, in connection with the original record and arguments, and a majority of the court adhere to the original opinion, and now think that the judgment of the court below should be reversed.

In our judgment, when it is conceded by plaintiff's counsel that Matilda Trau could have made a valid conveyance of her homestead without consideration, and that her grantee could have held it free from any claim of her creditors, the case is virtually disposed of against the plaintiff.

If the property were not exempt as a homestead, the voluntary conveyance of it would be a fraud upon her creditors, and their rights would be the same as though no conveyance had been made. It would in equity, as to her creditors, still be her property. This would be true whatever her intent was in making the conveyance. We are unable to see then, if she may make a valid voluntary conveyance of her homestead, in what respect the case at bar differs in principle from such conveyance. It being conveyed with intent to defraud her creditors—if such intent can be said to exist in conveying property which is exempt from the claims of creditors—the fact of such fraudulent intent will forever preclude her from asserting title against her fraudulent grantee, and the conveyance is as absolute and binding between them, as though it were voluntary by way of gift.

The homestead may become liable to the claims of creditors either by abandonment or by the express contract of the owner. The homestead defendant in this case has not mortgaged or otherwise incumbered it for plaintiff's benefit. She has abandoned it, in the sense that she has permanently ceased to occupy it as a homestead. Before her removal she conveyed it away, not in trust, and for a proper purpose, but, as plaintiff insists, with a fraudulent intent. She cannot re-invest herself with the title, and much less, in our judgment, can the plaintiff claim a lien upon the property.

REVERSED.

ADAMS, J., *dissenting.*—I think this case should be affirmed. If the agreement between Mrs. Trau and her son was that she was to remain the owner of the property, as the evidence seems to show, we should treat the property as hers in this case. It is true that if her right were to be denied by her grantee, a court of equity would not enforce it. But this would not result from the fact that her interest in the property had been extinguished.

It is argued that Mrs. Trau had a right to sell and convey her homestead, and that therefore it is a matter of indifference to her creditors whether she received a consideration or not. But this can hardly be maintained. If she had received a consideration she might have used it in paying plaintiff's debt, or perhaps the plaintiff might have reached it upon execution. The conveyance seems to have been a mere device to enable her to hold and enjoy the property after it ceased to be a homestead.

Mr. Justice BECK concurs in the views above expressed by me, and adheres to his dissenting opinion originally filed.