GREEN et al. v. ROOT et al.

(District Court, S. D. Iowa, E. D. August 31, 1893.)

1. HOMESTEAD—CHANGE—CODE IOWA, §§ 2000, 2001.

One who has acquired a homestead right in property, as surviving husband of the owner of the fee, which descended to her son, is the "owner," within the meaning of Code Iowa, §§ 2000, 2001, relating to change of homestead.

2. SAME—RIGHTS OF CREDITORS WHERE TITLE TO NEW HOMESTEAD TAKEN IN WIFE'S NAME.

One who acquired a homestead right in property as surviving husband sold the same to the owner of the fee, and invested the proceeds in a new homestead, the title to which was taken in the name of his second wife. *Held*, that his creditors had no ground of complaint, and could not subject the new homestead to payment of their judgment, so far as it came within the homestead limits provided by law.

3. SAME—ADDITIONAL CONSIDERATION—RIGHT TO SET APART HOMESTEAD.

The property so purchased consisted of 102 acres of land, and part of the consideration was paid by the wife without knowledge of any judgment against the husband. On a bill to subject the land to payment of a judgment, respondents prayed that the new homestead be regarded as bought with the proceeds of the old homestead, and that the wife's contribution be placed on the land outside the homestead, with prior claim over complainant's judgment. *Held*, that the statutory limit of 40 acres (Code Iowa, § 1996) should be set apart as a homestead, free from lien of his creditors, to the extent of the value of the old homestead; that, as to the remainder of the property, the owner of the mortgage given to take up a purchase-money mortgage should have first claim, and the wife a second claim, to the extent of the money paid by her as part of the purchase price; and that complainant's judgment should have third claim, and the excess value of the homestead part should be applied on any unpaid portion of the wife's claim.

This was a suit by the executors of Harly Green against A. M. Root and Eliza Jane Root and others to subject certain real estate to payment of a judgment against said A. M. Root.

H. Scott Howell and W. C. Howell, for complainants.

T. J. Truelock, for respondents Root.

Theo. Guelick, for respondent Biklin.

W. E. Blake, for respondent Burlington Ins. Co.

WOOLSON, District Judge. This is an action to subject real estate to the payment of a judgment. The following facts appear, and are by me found:

A. M. Root and Eliza Jane Root are husband and wife, and residents and citizens of Iowa. In 1862 certain real estate in the city of Burlington, Iowa, became, by due conveyance, the property in fee of Dorinda Root, who was at that time the wife of said A. M. Root. From that time until her death, which occurred in March, 1887, said property was the homestead of said A. M. Root and his said wife Dorinda. After the death of his said wife Dorinda, A. M. Root continued, with his son, William H. Root, who was the only child of said Dorinda, to occupy said Burlington property as his homestead. In March, 1888, said A. M. Root married the respondent Eliza Jane Root; and she at once took up her home with her said husband and said William H., on said Burlington property, as her homestead. Presently, there arose such difficulties or estrangements among the members of the family that said William H. left this Burlington homestead. During the lifetime of Dorinda, A. M. Root became insolvent, and out of employment. Dorinda consented to and did execute a mortgage on this homestead (which has since been paid off and discharged) to secure a loan, whose proceeds purchased certain ferry stock, and at her instance the stock was put in the name of the said William H. It also appears that A. M. Root, during a large portion of his insolvency, kept his bank account with, and in the name of, said William H. After the estrangements above referred to, A. M. and his son, William H., presented to each other accounts, the one against the other, with a view to the settlement thereof. The evidence is conflicting as to the respective aggregates of these accounts. Some evidence is introduced, tending to show that the account presented by the father against the son was considerably larger than that by the son presented against the father. I do not find it necessary to determine what these aggregates were. There were attempts at adjustment of these accounts. Whether these accounts finally entered into the transaction pertaining to the homestead, or not, is in conflict in the evidence. But the evidence shows that A. M. Root and his wife Eliza Jane executed to said William H. Root a deed for the Burlington homestead property, and said William H. paid to A. M. Root $1,500. The preponderance of the evidence shows that this $1,500 was paid to the father by the son for said deed, whose expressed consideration is that sum. Upon delivery of this deed, and payment of said sum, A. M. Root and wife delivered possession to said son of said Burlington homestead property. Thereupon was purchased the property involved in this action,— about 102 acres,—and also 25 acres adjacent thereto, which have since then, and before the bringing of this action, been sold. This property was situated in Des Moines county, Iowa, and is specifically described in the bill herein. The evidence shows that the purchase price of this newly-acquired property was about $3,100, but that costs and taxes amounting to about $300 additional were paid, to clear up the title; so that this property (hereafter called the "farm property," in contradistinction from the Burlington or city property, above spoken of) cost about $3,400. This $3,400 was arranged for as follows: The $1,500, proceeds of city homestead, was paid on

this farm property. Eliza Jane paid $200 which she had received from her father, and $1,700 of the purchase price was secured to the defendant insurance company by a mortgage on the farm property. Subsequently, and before the bringing of this action, this mortgage was paid off, and a mortgage, upon Feb. 22, 1890, executed by Root and wife to respondent Biklin, guardian, etc., for $1,200, drawing 7 per cent. interest from date. The answer of said Biklin shows that on February 22, 1892, said principal of mortgage debt had, by payment, been reduced to $600; so that there now remains due to said Biklin, thereon, the sum of $600, with interest at 7 per cent. from February 22, 1892. The evidence shows that respondent Eliza Jane Root has paid on said farm property, and of her own money, obtained from her father, the sum of $900, inclusive of the original $200, paid at time of purchase. By sale of the 25 acres of the farm, above referred to, and before this action was brought, there was realized $800, which was at once paid in on the then outstanding insurance company mortgage. The payments made, including those on principal and interest of mortgages, may thus be summarized: Money of Eliza Jane Root, $900; proceeds of Burlington homestead, $1,500; from proceeds of other property, $800; leaving outstanding $600, and interest from February 22, 1892. This applies to the farm, as originally purchased. If we omit the $800, proceeds of the sale of said 25 acres before this action was brought, the payments applied to the property involved herein, before the bringing of this action, are summarized thus: Money of Eliza Jane, $900; proceeds of city homestead, $1,500; leaving outstanding Biklin mortgage, of $600 (principal). In September, 1873, one Joseph Payson, as assignee, etc., recovered in this court judgment against said A. M. Root for $310 damages and $127 costs, which judgment (exhibited with bill) was duly assigned to Harly Green, a resident and citizen of the state of Illinois. At date of his death, which occurred in 1887, Green owned said judgment. The complainants are executors of the last will. etc., of said Green, duly commissioned by circuit court of Lee county, Iowa. Executions were duly issued upon said judgment in December, 1873, and August, 1890, and were, by the marshal, returned nulla bona. Complainants' contention is that the $1,500—money received from the son, William H., at time of deeding city homestead—is liable to said judgment, the same being placed in the farm property in name of Eliza Jane, the wife, with intent to hinder and defraud creditors, to wit, complainants, in the collection of said judgment. The respondents Root contend that this farm is the property of said Eliza Jane, and not liable to said judgment; that the payment of said $1,500 to A. M. Root was the proceeds of sale to said William H. of his (A. M.'s) homestead right, and was exempt from complainants' judgment, as was the homestead itself; that said sale of homestead was with the intent of purchasing with the proceeds another homestead, and said $1,500 was at once paid for the new homestead, which said A. M. and said Eliza Jane at once and ever since have occupied, and now occupy, as their homestead, and same is, to the same value as the old homestead, exempt from complainants' said judgment. Eliza Jane also

claims that she had no knowledge of any claim of complainants' judgment when she paid in thereto her $900, and she asks her interest may, to the extent of said money, be protected, and decreed to be prior to any claim of complainants thereon.

The questions to be determined in this action involve the proper construction of the statutes of Iowa relating to homesteads. This court is bound by the construction placed thereon by the supreme court of that state. Rev. St. § 721; Nichols v. Levy, 5 Wall. 433. These homestead laws have, for their beneficent purpose, protection to the family, and the preservation of the homes of the state. Under these statutes, no person is justified in giving credit because of ownership of homestead, unless he shall obtain a contract expressly making the homestead liable; for the statute plainly notifies him that the homestead is only liable for those general debts which were contracted before the homestead right attached. Code Iowa, §§ 1988, 1992. The supreme court of Iowa are abundantly and unquestionably justified in construing these statutes liberally in favor of homestead exemptions. The lawmaking power of that state has recognized that the beneficial effects of these statutes would necessarily be largely reduced if the debtor must, in order to avail himself of these homestead exemptions, continuously occupy the original homestead thus exempt. If removal to a new homestead made the new homestead liable to debts as to which the old homestead was exempt, the opportunity of the debtor to better his condition, and his ability to earn, and to place his family in more comfortable surroundings, and perhaps to engage in employment of much benefit to the public, would largely be cut off. To meet this difficulty, sections 2000 and 2001 of the Code of Iowa provide:

(2000) The owner may, from time to time, change the limits of the homestead by changing the metes and bounds, as well as the record of the plat and description, or may change it entirely, but such changes shall not prejudice conveyances or liens made or created previously thereto.

(2001) The new homestead, to the extent and value of the old, is exempt from execution in all cases where the old or former homestead would have been exempt, but in no other, nor in any greater degree.

The essential points under these sections which establish the exemption of the new homestead are, if the old homestead is sold, that such old homestead was exempt from the debt, and that it must have been sold with a view to obtaining a new homestead, and the proceeds must be put into the new homestead, and the latter occupied as such. Then, to the value of the old homestead, the new is exempt, to the same extent as was the old. This general statement should perhaps receive the qualification that the proceeds, pending transfer into new homestead, be not diverted to any intervening use, wherein such proceeds became, for the time being, liable to execution for the claim against which the old homestead was exempt. Thus, in Dalton v. Webb, 83 Iowa, 478, 50 N. W. 58, where proceeds of the old homestead, in Iowa, were invested in land in another state, and said land subsequently exchanged for land in Iowa, held, the Iowa land was not exempt, although it would have been exempt, had the exchange been directly from the old home-

stead into Iowa land. There is, in the case at bar, no contest as to the old homestead having been exempt from the debt set out with bill herein. But complainants, at the threshold of the matter, insist that the term "owner," as used in said section 2000, supra, refers to, and only includes, the owner of the fee or title to the homestead. If this position be correct, decree must be herein for complainants; for A. M. Root had no homestead right in the city property, except as the same came to him as the surviving husband of his wife Dorinda, who, at her death, held the fee to that property; and the evidence herein shows that the fee descended to her son, William H., subject to the homestead rights of her said husband, A. M. Had the lawmakers thus intended to limit the right to make the exchange of homesteads, their intention could have been made plain, beyond possibility of dispute, by the addition of a very few words to the present statute. It is significant that words were not added, when, by the addition,—so easily made,—the limitation contended for would have been unmistakably manifest. Reference has above been made to the liberality of construction, given by the supreme court of Iowa to these homestead exemptions. This liberality has been manifest in many directions. For illustration, the question has frequently arisen as to what property, or interest in property, other than a fee interest, can become the basis of a homestead right. In determining this, the supreme court of the state have repeatedly decided that a tenant in common may acquire a homestead right in the land held in common. Thorn v. Thorn, 14 Iowa, 49; Wertz v. Merritt, 74 Iowa, 686, 39 N. W. 103; Bolton v. Oberne, 79 Iowa, 278, 44 N. W. 547. And this is true, even though the tenant in common had only an equitable title thereto. Hewitt v. Rankin, 41 Iowa, 35. "Certainly, a homestead may be held under such a title," say the court. So, too, a leasehold interest, accompanied by actual family residence occupancy, will sustain a homestead right. Pelan v. De Bevard, 13 Iowa, 53; Wertz v. Merritt, supra. And a contract of sale (bond for deed) giving right to a deed when purchase money shall have been fully paid, accompanied with actual occupancy by the family, sustains a homestead right. Stinson v. Richardson, 44 Iowa, 373; Donner v. Redenbaugh, 61 Iowa, 269, 16 N. W. 127; Drake v. Moor, 66 Iowa, 58, 23 N. W. 263; Lunt v. Neeley, 67 Iowa, 100, 24 N. W. 739; Belden v. Younger, 76 Iowa, 567, 41 N. W. 317. And in Lowell v. Shannon, 60 Iowa, 716, 15 N. W. 566, the court, when considering the question of homestead rights as to creditors, say:

The material inquiry is, what are the metes and bounds of the homestead, as a homestead? And there is nothing in the statute requiring that the title thereto should be in either the husband or wife.

These cases settle conclusively any question that might arise as to whether, in Iowa, the homestead right may exist without the basis thereunder of a fee ownership, or holding of legal title.

The cases cited under the last two points nearly all arose under the consideration of section 1990 of the Code, which declares "of no validity" a conveyance or incumbrance "by the owner," unless

concurred in and signed by the husband or wife, if "the owner" is married. Thus, the term "owner," as applied to homestead, in said section, by the Iowa supreme court, includes one who, as tenant in common, has merely an equitable title in the land, one who has merely a term of years leasehold interest in the land, and also one who has merely the right to obtain the title by paying off the deferred purchase money. In the case at bar, A. M. Root unquestionably had a homestead right in the city property. The uncontradicted evidence shows he had elected to take his homestead right in lieu of distributive share. Complainants concede that such homestead right, after the death of his wife Dorinda, was of such a nature that neither heir nor creditor could remove him therefrom, against his will. The question may be here pertinently asked, under the liberal construction the Iowa supreme court have given to the homestead statute, why should he not be permitted to change his homestead thereunder? What useful purpose is to be subserved by compelling him to retain his residence in that city property, or else forfeit his homestead rights? And if it be found, as found it must be, that it is inconsistent with the general beneficent spirit of these statutes, as stated by the supreme court of the state, that he be thus restricted in his homestead to that one piece of property, and if it be in harmony with the construction and policy of the statute that this change may be made, there would seem small occasion for doubt as to the correct answer to be made. The supreme court of Iowa have held (State v. Geddes, 44 Iowa, 537) that the sale of the homestead may be made on credit, and yet the proceeds be exempt, as was the old homestead itself. In that case, Geddes sold his homestead to Eberhart, taking a mortgage thereon to secure $1,400 of the $1,600 sale price. Eberhart having failed to pay the mortgage debt, Geddes foreclosed the mortgage, and, nearly two years after the said sale, sold the same on foreclosure decree, Geddes bidding in the same for amount of debt and costs. Eberhart redeemed from this judicial sale, by paying the proper amount to the clerk of court. This redemption was made over two years after the sale by Geddes of the homestead to Eberhart. This redemption money was garnished in the clerk's hands on execution issued on judgment rendered against Geddes before the homestead was sold to Eberhart. The supreme court, after quoting sections 2000 and 2001, supra, say (page 539):

Here is an absolute right given to exchange one homestead for another, or to sell the homestead and acquire a new one, which shall be exempt to the same extent as the former one. There is no prescribed method as to how this shall be done. The statute does not provide that the sale must be for money in hand, which must be immediately invested in the new homestead: that is, that the selling of the old and the purchasing of the new must be simultaneous acts. We must give the statute a reasonable construction to effectuate its object. If a homestead be sold, and the proceeds applied to some other use, there is no doubt that the exemption would cease; but where the sale is made on credit, and with the intention of using the proceeds, when collected, in purchasing another homestead, and the proceeds are not put to any other intervening use, they are exempt while thus in transitu, so to speak, from the old homestead to the new. Any other rule would practically prohibit the changing of homesteads.

The liberality with which the Iowa supreme court have construed these statutes, with the purpose of carrying into most complete effect the beneficent policy therein attempted to be declared, is further illustrated in Harsh v. Griffin, 72 Iowa, 608, 34 N. W. 441. Section 1990, Iowa Code, above quoted, was under consideration; and its language expressly declares the conveyance to be "of no validity, unless the husband and wife, if the owner is married, concur in and sign the same joint instrument." The husband, Griffin, conveyed the homestead to his wife, the deed being executed by him alone. The point was expressly presented that the deed was, by the very terms of the statute, "of no validity," since the husband was married, and the wife did not "concur in and sign the same joint instrument" of conveyance of the homestead. The unanimous opinion overrules this point:

> The case of a deed to the wife is not within the spirit of this section, which surely cannot intend that the wife should do the vain and absurd thing of executing, as grantor, a deed to herself, as grantee.

This same idea of ascertaining the spirit of these sections, and deciding accordingly, even though an inflexibly strict construction of the letter of the section be to the apparent contrary, has continuously marked the decisions of that eminent court on these homestead sections.

As illustrating this suggestion, we may refer to a class of cases in which has been considered the question as to voluntary conveyance of the homestead while judgments were standing against the owner, which, but for the homestead character of the land, would have been statutory liens against it. The court, in numerous cases, citation whereof is here not necessary, have held and enforced the rule that abandonment of the homestead property would make the property liable for debts, judgments, etc., as to which, while occupied as a homestead, it was not liable. In other words, as a general proposition, whenever the title holder, by his act, deprived the property of its homestead character as to him, he exposed it to liability for debts and judgments then existing (save, of course, the excepted cases,—by statutes,—of change of, or bona fide sale of, homestead, etc.). Hence, the claim that a voluntary conveyance of homestead was such an abandonment thereof as to subject it to liability for existing judgments, etc. But the supreme court give no encouragement to this contention. On the contrary, that court uphold exemption of the homestead under voluntary conveyance. Addicken v. Humphal, 56 Iowa, 366, 9 N. W. 299. A widowed mother, against whom were outstanding judgments, which would have been active against the property but for its homestead character, executed to her son a voluntary conveyance of the homestead. There was averred, in the bill to subject the property to debts outstanding at time of this voluntary conveyance, the further ground that such voluntary conveyance was, as to existing creditors, fraudulent and void, under the general doctrine applicable to such a state of facts. But the court (Delashmut v. Trau, 44 Iowa, 613) decide adversely to this contention:

.Suppose the conveyance was intended to keep the property beyond the
reach of plaintiff. What legal ground of complaint has he? He could not
reach the property for the satisfaction of his debt before the conveyance, and
he was in no worse condition after it. His basis of relief must be that the
conveyance was fraudulent as to him. But how is he to make this fraud
appear? The most and all that he can claim is that the conveyance was
voluntary, and made for the purpose of hindering him in the collection of
his debt. But the conveyance does not create any exemption of property.
It merely perpetuates one which existed before. In order to make a volun-
tary conveyance void as against creditors, it is indispensable that it should
convey property which would be liable to be taken for the payment of debts.

This reasoning and opinion have been followed by that court in
numerous cases, wherein the facts have presented many different
phases, including voluntary conveyance from husband and wife.
Officer v. Evans, 48 Iowa, 557; Griffin v. Sheley, 55 Iowa, 517, 8 N.
W. 343; Butler v. Nelson, 72 Iowa, 732, 32 N. W. 399; Payne v.
Wilson, 76 Iowa, 381, 41 N. W. 45; Beyer v. Thoeming, 81 Iowa, 519,
46 N. W. 1074.

As illustrating further the liberal construction given by that court
to the homestead statutes of that state, and as also furnishing
points for subsequent consideration herein, may be cited Jones v.
Brandt, 59 Iowa, 344, 10 N. W. 854, and 13 N. W. 310. The city home-
stead, whose title was in the husband, was exchanged for a new city
homestead and $300 in money. With this $300 the lot in question
was purchased. This lot was not contiguous to the new home-
stead, nor was it used in connection therewith. Section 1995, Code
Iowa, provides that the homestead "may contain one or more lots
or tracts of land, * * * but must in no case embrace different
lots and tracts, unless they are contiguous, or unless they are habit-
ually and in good faith used as parts of the same homestead." In the
deed of this lot, and by direction of her husband, plaintiff's name was
inserted as grantee. Thereafter, a judgment creditor of plaintiff's
husband, whose judgment existed at time of transfer of homestead,
etc., sold this lot under his judgment against the husband. The
controversy before the court was as to the liability of this lot, in
plaintiff's name, for the said judgment against plaintiff's husband.
The court say:

The old homestead was exempt from the debts of George W. Jones [plain-
tiff's husband]. He could have lawfully conveyed that homestead to his
wife. If he had done so the creditors would have had no just ground of
complaint. If the old homestead had been conveyed to plaintiff, and then
exchanged for the new homestead and the lot in question, it is clear, it seems
to us, that the creditors of George W. Jones could not have subjected the
lot to the payment of his debts. It is apparent, therefore, that the creditors
of George W. Jones had no legal claim upon the old homestead. They can-
not claim that it is a fraud upon them that they have been deprived of its
proceeds. Appellants insist that the case is just the same as though the lot
in question had been conveyed to George W. Jones, and by him conveyed
to plaintiff. With equal propriety it might be claimed that the case is the
same as though the old homestead had been conveyed to the plaintiff, and
by her exchanged for the new home and the lot in question. It is said
that, if the lot in question had been conveyed to George W. Jones, the judg-
ment against him would have been a lien against it. This must be conceded.
Whether the proceeds of the homestead shall become liable for the debts
depends always upon the manner of dealing with it. If the homestead should
be exchanged for another, the new would be exempt; but, if it should be ex-

changed for a stock of merchandise, it would not be exempt. It does not advance the claim of appellant to say that the lot in question would have been liable for the husband's debts if the course of dealing respecting it had been different. The controlling facts in this case are that the title to the lot never was in the husband, and the conferring of title upon the wife placed the creditors in no worse condition than they were before. Under these circumstances, we think that the lot cannot be subjected to the payment of the debts of the husband, upon the ground that this conveyance, as to them, was fraudulent. Delashmut v. Trau, 44 Iowa, 613; McTighe v. Bringholf, 42 Iowa, 455.

Under the Iowa statutes, I hold that A. M. Root was "the owner," within the intent and spirit of the sections relating to change of homesteads. The homestead right is such a present, vested right that it has been held sufficient to entitle the wife to redeem the homestead from tax sale, even after the treasurer has conveyed the property by his tax deed. Adams v. Beale, 19 Iowa, 61. While the homestead statutes are simply statutes of exemption, rather than a law conferring affirmative rights (Burns v. Keas, 21 Iowa, 257), yet the homestead right of the husband, where the title is in the wife, is of higher character—more in the nature of vested interest and title—than is his dower right in other lands (Chase v. Abbott, 20 Iowa, 158). Defendant A. M. Root, by his occupancy of the city homestead (that is, exercising his homestead right), could prevent his son, who was entitled to possession on termination of that homestead right, from receiving any revenue therefrom for years,—for many years, should the father live out his expectancy. The evidence shows the rental value of that property to be $150 or more per year. The gross rental for 10 years would equal the amount the son paid the father for his deed. Besides, the property (buildings, etc.), during such occupancy, would naturally deteriorate, and the value thus depreciate. I see no good reason why the father might not transfer to the son his homestead interest,—or release same, if the expression be preferable,—in consideration of payment made by the son. Both parties are advantaged thereby. The fee holder secures immediate possession and use and rentals. The father secures his money with which to buy a new homestead.

I do not overlook the decisions of the Iowa supreme court, wherein that court hold that under the facts therein presented a surviving husband has no right or interest in the homestead he is occupying which will sustain a mortgage or conveyance thereof. But the reasoning—the argument—of these decisions, supports the position here taken. Meyer v. Meyer, 23 Iowa, 359, holds that the surviving husband cannot take both homestead right and distributive share in the homestead. (Under the Iowa Code, dower is abolished, and the surviving husband or wife is given one-third in fee, which is known as "distributive share.") Therefore, a mortgage from such survivor, who has taken his homestead rights, cannot be a lien on any distributive right he might have had therein; and he obtains no title to the homestead property from mere occupancy and possession thereof. Butterfield v. Wicks, 44 Iowa, 310, closely follows the line of this decision:

This brings us to inquire whether Stephen Wicks, by virtue of his homestead rights in the property, acquired any interest in the property which

would be the subject of mortgage. His right in the property was merely to possess and occupy it until otherwise disposed of according to law. Subject to this right of the husband, the wife might have disposed of the property by will. Code, § 2010. And, in the absence of will, we have no doubt that, when the husband's rights, by abandonment, or in any other manner, are at an end, the property passes by the ordinary rules of descent. The right of occupancy and possession confers no title to the property. Meyer v. Meyer, 23 Iowa, 370. It is a mere personal right. When the occupancy is abandoned, the right ceases. It would seem to follow that this right of possession confers no right which can be the subject of mortgage. No valuable interest could pass to the mortgagee, for upon the foreclosure of the mortgage and the eviction of the mortgagor, his homestead right would cease, and the property pass unincumbered to the heir or devisee.

Smith v. Eaton, 50 Iowa, 490, affirms substantially the same principle.

It will be noticed that in each of these cases the attempt was made by the surviving husband or wife to convey or incumber to a stranger the homestead right, which was the conditional right to occupy, etc., and the doctrine of the cases is that such homestead right or interest could not thus be transferred. But the reasoning of Butterfield v. Wicks, supra, supports the conclusion herein reached. A stranger could take nothing by deed or mortgage from such survivor, because, "when the husband's rights by abandonment, or in any other manner, are at an end, the property passes [to the holder of the fee] by the ordinary rules of descent." "When the occupancy [of the survivor] is abandoned, the right to occupy ceases." "No valuable interest could pass to the grantee [if a stranger, but, if the heir was the grantee, such valuable interest could pass], because, when the homestead right would cease [in the grantor], the property would pass [at once] to the heir." This reasoning, bottomed on the fact that "nothing could pass to the grantee," justifies the assertion that if something valuable,—the thing attempted to be conveyed,—could and did pass to the grantee, the deed is within the reasoning of the cases, and is valid. In case at bar, something valuable did pass thereby, viz. possession, and right to possession and use; and the fact that upon execution of such conveyance "the property would at once pass to the devisee or heir," instead of sustaining the conclusion of invalidity of deed, as under facts in 44 Iowa, is the strongest argument inducing acceptance of deed, and payment therefor by grantee.

The present case is not embarrassed by any questions which might possibly arise because of judgment lien against the premises. The bill does not aver that the judgment set out ever was a lien against any of the property in question. The relief prayed is solely on the ground that "A. M. Root, for the purpose of defrauding his creditors, and for the purpose of hindering and delaying petitioner and his other creditors in the collection of their legal claims against him, fraudulently caused the deed * * * for said lands so bought and paid for by said A. M. Root to be made out to and in the name of his wife, said Eliza Jane Root, and she still has and retains the naked and legal title." The specific relief prayed is that this court "will find and adjudge said lands * * * to be in fact the lands of said A. M. Root, and will order the same to be sold to

pay the judgment of petitioner, subject to any bona fide lien of defendant Biklin," etc. This brings me to the charge that the new farm property is really the property of A. M. Root, and title thereto was fraudulently placed in the wife, with intent to defraud, etc. The general principle applicable to this question is beyond dispute. Counsel do not differ in its statement, but, as usual in such cases, the controversy lies as to its extension and application to the facts in the case. The Iowa cases, supra, enable us to arrive at a satisfactory conclusion. A. M. Root says he gave the $1,500, proceeds (and which I find to be the value) of his homestead right in the city property, to his wife Eliza Jane, and that she paid it on the farm homestead. Other portions of his and his wife's testimony leave in doubt the manual possession by her of this $1,500. I do not regard such manual possession material. He had a right to sell the old, with a view to invest the proceeds of the old in the new homestead. While in transitu (State v. Geddes, supra) to the new homestead, such proceeds were not liable to complainants' judgment. When the proceeds had been paid into the new homestead, this homestead was exempt as a homestead. Now, had said A. M. Root invested such proceeds in a new homestead, in his own name, the exemption in the new homestead would have equaled the exemption in the old homestead. But he could lawfully have put the proceeds of the old into the new homestead, and have the title to the new homestead placed in his wife. Jones v. Brandt, supra. It therefore becomes immaterial whether he actually handed the money to his wife, and she paid it over. Whether he or she paid it over, no creditor is defrauded, if the exemption in the new homestead is of no greater degree than the old homestead possessed.

The underlying principle which provides a test as to whether a voluntary conveyance is fraudulent as to existing creditors is clearly and well stated by Judge Dillon, then one of the justices of the supreme court of Iowa, in Wolf v. Van Meter, 23 Iowa, 401. Having (page 405) stated the rule obtaining in England (that, to make a voluntary conveyance void as to creditors, it is indispensable that it should transfer property liable to be taken in execution), he states that in this country, the rule obtained that:

If the property transferred by the debtor be such as could be reached by the creditor through the act of a court of equity, though it could not be seized on execution at law, a voluntary conveyance of such property, to the prejudice of creditors, would be void. But when the property transferred was that upon which the creditors had no claim, either at law or equity,—that is, was property which the creditor would have no right to call upon either court to apply towards his debt,—it cannot be predicated of the transfer of such property that it was fraudulent.

Tested by this rule, and regarding the placing of the title to the property in her as a voluntary conveyance from her husband, the conveyance, as to the new homestead, is not fraudulent as to complainants' judgment. In A. M. Root's name the new homestead would be exempt to the same degree as was the old homestead. Hence, he may execute to his wife a voluntary conveyance thereof, and same is not fraudulent as to complainants. The extracts above given from Delashmut v. Trau abundantly confirm the conclusion

thus reached; and, if the new property had been limited in area to that provided by the Iowa statutes, the decree herein would have been easily rendered. But there are 102 acres, whereas the Iowa Code (section 1996) limits the homestead, when not within a town plat, to 40 acres. The case at bar is not, as in Jones v. Brandt, supra, an exchange of homesteads, else, on authority of that case, the entire tract, in wife's name, might have been exempt. In case at bar, the old homestead, not liable to complainants' judgment, was sold for cash in hand, and the intent, carried out, of therewith purchasing new homestead, carries with the purchase the like exemption to the new homestead, if of no greater value than the homestead so sold, and if limited to the statutory extent of area.

Further complications arise from the fact that the wife's $900 has been placed with the old homestead's $1,500, and the aggregate paid in on the new property, while the title is put in the name of the wife. As between the husband and wife, if she so demanded, the wife might perhaps have primary right, under the statute, to determine the boundaries of the homestead in the 102 acres, the fee title being in her name, since section 1998 apparently gives the owner of the title, as contradistinguished from the husband or wife of such owner, the first right to plat the homestead. But, turning to the pleadings herein, I find that defendants Root, in their joint answer, as amended, referring to the 102 acres, state that, immediately after its purchase, they took possession of said real estate, and have ever since resided upon the same, as their homestead, and, to the same extent in value of the former homestead, they claim the same as exempt from execution, and in no manner, nor any part thereof, liable to plaintiffs' debt. There is in this statement no demand on the part of respondent Eliza Jane, who holds the fee title, that her $900 shall be set off as a homestead. Indeed, the other averments of the answer, as amended, rebut such idea, and expressly state that the old homestead was sold with the design of purchasing with proceeds of such sale a new homestead. These allegations would justify the conclusion that both A. M. Root and his wife expected and understood the $1,500 was to go into the homestead on said property. This conclusion derives additional strength from the following extract from the answer of respondents Root:

They further say that Eliza Jane Root had no knowledge or information whatever of any claim of plaintiffs at the time of such purchase, and that she in good faith invested in said property $900 of her own money; and to that extent she prays the court that her interest in said real estate may be protected, and declared to be prior to any claim of the plaintiffs herein.

Apparently, and construing this, so far as practicable, in harmony with the other averments, the intention of the respondents Root is (1) that the new homestead be regarded as bought with the proceeds of the old homestead; and (2) that Eliza Jane's $900 be thereby placed on the land outside of the homestead, with prior claim thereon over any claim of complainants' said judgment. May this court grant the first point just named? Henderson v. Rainbow, 76 Iowa, 320, 41 N. W. 29, involved the boundaries of a homestead. The husband owned 40 acres, and the wife 120 acres adjoining. The

dwelling was built partly on each tract. Section 1995, Code Iowa, provides that the homestead may embrace different subdivisions or tracts, if contiguous, etc., not exceeding 40 acres. The court say:

It is plain that the homestead is upon two subdivisions of land. It must include the dwelling. The dwelling is upon two tracts of land. The homestead, therefore, is to be selected and marked out upon both.

And in refusing to permit the husband to plot his entire 40 as a homestead, and thus place it all beyond reach of creditors, the court say:

If plaintiff may claim his forty as exempt, because a part of the house is on it, the wife may claim that her land is exempt for like reason.

In case at bar there is no claim of the wife that her $900 should be regarded as invested on the homestead 40. The pleading, as above shown, negatives this idea.

While not decided upon facts which make them controlling authority in this case, there have come under consideration by the Iowa supreme court other cases which have brought that court to consider the question of the right of homestead, when related thereto, and to adjacent lands which comprised part of the same tract. Section 1998, Iowa Code, directs that, if the homestead has not already been platted, an officer, having execution against the property of judgment defendant, may cause the homestead to be marked off, platted, etc. Under such sections, the supreme court of Iowa have held (Owens v. Hart, 62 Iowa, 620, 17 N. W. 898) that where the parties entitled to homestead did not object to sale of entire tract without platting of homestead therein, such failure to object did not validate the sale en masse; and this although the sale was under a special execution, describing the entire tract for the sale, and not mentioning any homestead as included therein. In Martin v. Knapp, 57 Iowa, 336, 10 N. W. 721, held that, although, after the sale there yet remained of the tract, unsold, the dwelling house and more than enough land for the statutory homestead, the sale would be set aside because of the officer having failed to set off the homestead. And such court has repeatedly held that a sale by an officer of any portion of the tract which might have formed part of the homestead is invalid, if the homestead has not been platted. White v. Rowley, 46 Iowa, 680; Lowell v. Shannon, 60 Iowa, 713, 15 N. W. 566. It is not necessary that the premises selected for a homestead shall correspond with a government subdivision of 40 acres, but the selection may be made in such a way, from a larger tract, as to include the buildings used in connection with the homestead, although situated on different subdivisions. Schlarb v. Holderbaum, 80 Iowa, 394, 45 N. W. 1051. And, where the homestead is not platted, a conveyance by the husband, in which the wife does not join, of a portion of the tract which might be part of the homestead, in invalid. Woolcut v. Lerdell, 78 Iowa, 668, 43 N. W. 609. The case of Lowell v. Shannon, 60 Iowa, 713, 15 N. W. 566, has been cited above. But, in this connection it may be well to note with more particularity the holding, and reasoning of the court which led to that holding. Michael W. Woods, the husband of Catharine Woods, and father of the minor defendants, disappeared in 1874.

Whether living or dead,· was not known. He was never heard of after his. disappearance. When he left, he owned in fee 63 acres of land adjoining a 60-acre tract, which his wife, mother of the minor defendants, owned in. fee. These tracts were used as one farm, from which came the support of the family. The dwelling house was on the wife's land, but much of her tract was barren, and not tillable. For that reason the chief support of the family was the husband's land. A creditor attached the land of the husband after he had disappeared, and, while the sheriff was proceeding to enforce the execution against the land, the wife served on the sheriff a demand for the setting off of a part of the husband's land as her homestead. The sheriff disregarded the demand, and sold the land to plaintiff, who had notice of these facts. The mother had since died.

The principal question—and, indeed, as it appears to us, the only question—in the case, is this: May a homestead be claimed by a family, in lands of a husband, as against creditors of the husband, where the husband and wife own contiguous tracts of land, and occupy the two tracts as a homestead, with the dwelling house on the land of the wife. * * * If the right of homestead attached to the land of Michael Woods. a sale by the sheriff, without platting the same, is invalid. * * * The claim and demand made by the wife to the sheriff operated for the benefit· of the family as effectually as if made by the husband and father. We come, then, to the merits of the controversy. If the dwelling house of the family had been located upon the land in controversy, there would be no question of the homestead right, as claimed. But, because the dwelling house is upon the land of the wife, it is maintained that the homestead cannot be made to embrace any part of the husband's land. It is true, section 1994 of the Code provides that "the homestead must embrace the house used as a home by the owner thereof," etc. But the term "owner" cannot have much force in determining this question, because the ownership, as between husband and wife, is not a material question in determining homestead right. The homestead is exempt from judicial sale, "whether owned by husband or wife," and either may make the homestead selections. Code, §§ 1988, 1998. And it may embrace different lots and tracts, if they are contiguous. Section 1995. Now, it appears to us to be immaterial, so far as the rights of creditors are concerned, whether the legal title to the homestead be in the wife or husband, or whether one of them holds the legal title to one tract, and the other to another tract. The material inquiry is, what are the metes and bounds of the homestead, as a homestead? and there is nothing in the statute requiring that the title thereto should be in either husband or wife. The, object of the law is to secure to the family a homestead exempt from judicial sale; and, to attain this end, regard is had as to which particular forty acres of farm is the homestead, rather than to the question whether the legal title to this part or that is in the husband or wife. Lowell v. Shannon, supra.

My conclusion is that the homestead 40 acres are exempt from complainants' judgment, if of no greater value than $1,500. That the situation of the remaining 62 acres, outside of the homestead, as to said judgment, is as follows: (1) The mortgage to respondent Biklin ($600, and interest at 7 per cent. from February 22, 1892) has first claim thereon. The mortgage to Burlington Insurance Company has been fully discharged, and bill, as to said company, should be dismissed. (2) The $200 paid on. purchase of farm by Eliza Jane Root, and so much of the remainder of. the $900 paid by her as was paid on the principal of the deferred purchase money, is the next (second) claim thereon. This money was paid by her without knowledge of complainants' claim, and in good faith, before the bringing of·

this suit, but any portion thereof which was applied to discharge interest on mortgage is not to be included in said second claim. (3) That complainants' said judgment is the next (third) claim on said 62 acres. (4) That, if said 40-acre homestead shall be of more than $1,500 value,—which does not seem probable, under the evidence,—then the excess of said value over said $1,500 shall be applied towards the $900 claim of respondent Eliza Jane Root; that is, so much of said $900 as is included in said above (second) claim.

No evidence has been submitted as to the bounds of said homestead. The evidence submitted does not enable me to determine with any accuracy the relative values of said homestead 40 and the land outside. This cause is therefore referred to A. Hollingsworth, Esq., who is hereby appointed special master herein. He will proceed to take evidence, determine, find, and report: (1) Boundaries of homestead 40. If not already platted, he will require respondents Root to file herein, within 20 days from notice of such requirement, a properly acknowledged plat of said homestead boundaries. If same is not so filed, said master will proceed to plat and fix such boundaries, at time and place of which due notice is given counsel on either side. (2) Find value of said homestead as so platted. If same exceeds $1,500, find excess of such value. As I construe the evidence submitted, said 40 acres will not equal $1,500. (3) Find what amount of said $900 paid in by Eliza Jane Root was applied on purchase money of said 102 acres, or on the principal of debt secured by mortgage for deferred purchase price of same. (4) Find value of said 62 acres lying outside of said homestead 40. (5) Find such further and relevant facts as counsel on either side may, in writing, request, or said master deem important in settling decree herein on basis hereinbefore stated. Said master will fix time and place of hearing, and thereof duly notify counsel of record in this action, and will report to the court the evidence taken, his findings as above directed, and such other matters as he may deem proper and relevant herein, under the evidence already or hereafter submitted. The clerk will record order forwarded herewith, appointing said special master, and defining his duties, as above set forth.